DECISION
This case comes before the Court on the verified complaint filed by the plaintiffs, Providence Teachers Union Local 958, Phyllis Tennian, Philip DiCecco, and Father Nick Milas (Union) against the Providence School Board, by and through its Chairperson, Gertrude Blakely; Arthur Zarrella, its Superintendent of Schools; Mark Dunham, its Director of Business Affairs; Joseph Chiodo, the Controller of the City of Providence; and Stephen Napolitano, the Treasurer of the City of Providence (School Board). The complaint seeks injunctive relief, a writ of mandamus, and the creation of a segregated bank account.
 Facts and Travel
The Providence Teachers Union is a labor organization that is the duly certified collective bargaining representative for teachers within the City of Providence. The Union and the School Board are parties to a collective bargaining agreement under which the School Board elected to pick up and pay to the Employee Retirement System of the State of Rhode Island the contributions which would be otherwise payable to the System by its employees. With respect to this agreement, R.I.G.L. 1956 § 16-16-22.1
dictates the manner in which said payments are to be made. According to R.I.G.L. 1956 § 16-16-22.1(b), "Teacher member contributions picked up by city or town shall be paid from the same source of funds used for the payment of compensation to the teacher member. Picked up contributions shall be transmitted to the retirement system in accordance with the provisions of §§16-16-22 and 36-10-1." Rhode Island General Law § 16-16-22
entitled "Contributions to state system" states in pertinent part, that:
 "(a) Each member shall contribute into the system nine and one-half percent (9.5%) of compensation as his or her share of the cost of annuities, benefits, and allowances. The employer contribution on behalf of the employee shall be in an amount which will be a rate percent of the compensation paid to the teacher. . . .
 (c) In the case of a failure of any city, town or local educational agency . . . to pay to the state retirement system the amounts due from it under this section within the time period prescribed, the general treasurer is hereby authorized to deduct the amount from any money due the city, town or local educational agency from the state.
 (d) The employer's contribution shared by the state shall be paid in the amounts prescribed above for the city, town, or local educational agency and under the same payment schedule. Notwithstanding any other provision of this chapter, the city, town or local educational agency shall remit to the general treasurer of the State the local employer's share by the fifteenth of the following month. . . ."
This matter was heard on July 7, 1998 and August 26, 1998. The evidentiary record now before this Court includes the depositions of Joseph Chiodo, the Controller for the City of Providence; Mark Dunham, Senior Director for Administration, Finance, and Operations for the City of Providence; and James Reilly, Assistant Director of the Employees' Retirement System of Rhode Island. Marked exhibits were letters from Richard Skolnik, Esq. to Joseph Rotella, Esq. dated December 22, 1997 and March 26, 1998, a letter from Arthur Zarrella, Ped.D. to Richard Skolnik dated February 2, 1998, and the Employees' Retirement System of Rhode Island's monthly reports for the periods ending November 30, 1997, December 15, 1997, March 15, 1998, April 15, 1998, and May 15, 1998.
In their depositions of June 12, 1998, Chiodo and Dunham discussed the accounting system employed by the City of Providence and, more specifically, the fact that the school department prepares authorizations to pay, usually in the form of invoices, which are then forwarded to Chiodo's office for processing. Chiodo further explained that a single account named the "School Fund" is used to fund all school expenses, including the teacher payroll which is paid through a separate account at Citizens Bank. According to Chiodo, the deductions from the teachers' paychecks are not actually made; but are rather paper transfers, and the payments to the state retirement system are then made out of the School Fund. Chiodo also stated that his office was responsible for reconciling the bank statements and that the School Fund does not earn any interest. (Tr. at 15).
The deposition of James Reilly was taken on July 29, 1998. Reilly discussed the workings of the retirement system. He stated that the Providence teachers are members of the Employee Retirement System of Rhode Island and, as such, have a mandatory obligation to contribute to the retirement system. A stipulation was also introduced providing for the introduction into the record of the Employees' Retirement System of Rhode Island's monthly reports for the periods ending November 30, 1997, December 15, 1997, March 15, 1998, April 15, 1998, and May 15, 1998.
In the verified complaint, the Union alleged that the School Board had been and was presently in arrears in respect to the payment of both the employee and employer contributions to the state retirement fund and the other moneys which had been withheld from the teachers' pay pursuant to the collective bargaining agreement. The Union also claimed that as a result of the retention of the money, the School Board had been unjustly enriched and the teachers had suffered losses, such as investment earnings. In the complaint, the Union sought the issuance of a writ of mandamus to compel the School Board to immediately pay and continue to pay the Employees' Retirement System of the State of Rhode Island and all other obligations which arose from the deductions of moneys from teachers' salaries. Alternatively, the Union requested an injunction restraining the School Board from immediately failing to pay the Employees' Retirement System of the State of Rhode Island and other money deducted from teachers' salaries. Further, the Union asked the Court to order the School Board to establish and maintain a segregated bank account into which the gross teacher payroll would be deposited and from which deductions would be paid.
The School Board filed a motion to dismiss claiming that R.I.G.L. 1956 § 16-16-22 did not provide a private remedy; rather, it was a regulatory statute to be enforced by the State Treasurer who possessed the power to deduct the overdue amount from any money due the city. The School Board further argued that the Union lacked standing since no injury existed. An order was entered on July 15, 1998, Silverstein, J., denying the School Board's motion to dismiss, giving the School Board until July 27, 1998, to file their answer and continuing the matter until August 26, 1998, for further hearing on the merits. The School Board, in its answer filed July 30, 1998, plead the affirmative defenses of failure to state a claim upon which relief can be granted, failure to exhaust administrative remedies, lack of standing, and the defense of discretion.
The School Board then filed a motion for summary judgment on August 14, 1998, arguing that no material issue of fact existed; and, that they were entitled to judgment as a matter of law to which the Union filed a memorandum in opposition on August 21, 1998. The motion was heard on August 26, 1998, and an order denying the motion was entered on September 2, 1998, Silverstein, J.
The plaintiffs now move this Court to issue a writ of mandamus granting injunctive relief, and order the defendants to create and maintain a segregated bank account into which gross teacher payroll will be deposited and required payments deducted.
 The Mandamus Issue
In order to prevail on a petition for a writ of mandamus, the plaintiff must show that he has or had a clear legal right to have done the act that he seeks, and that the defendant has or had a clear legal and ministerial duty to perform the requested act without any legislative or judicial discretion. Brown v.Amarillo, 460 A.2d 7, 10 (R.I. 1983). A writ of mandamus will not lie if another adequate and plain remedy is available for obtaining the same relief Maroon v. West Warwick SchoolCommittee, 317 A.2d 455, 456, 113 R.I. 42, 44 (1974). Additionally, there must also be the appearance that the writ of mandamus will be effectual. Newbay Corp. v. Annarummo,587 A.2d 63, 67 (R.I. 1991). The purpose of the writ of mandamus is to enforce rights which have already been established rather than to establish or declare the rights of the parties. 52 Am.Jur.2dMandamus § 4 (1970). Since the writ of mandamus proceeds upon the assumption that the plaintiff has a legal right to the action demanded and the defendant has the corresponding duty of an imperative nature, the writ should never be granted in anticipation of an omission of that duty. Id. As such, only a present default or clear proof of a probability of default warrant the granting of a writ on mandamus. 52 Am.Jur.2d Mandamus
§ 90 (1970).
The Union seeks the writ of mandamus to compel the School Board to immediately pay and continue to pay the contributions to the retirement system and the other moneys which are withheld on the teachers' behalf. However, a writ of mandamus cannot be issued to compel the School Board to make the contributions at the same time as the payroll is paid. There is nothing in the state statutes which references the time period in which the deductions, other than the retirement contributions, must be paid. Further, R.I.G.L. 1956 §§ 16-16-22 and 16-16-22.1 are read to state that the School Board has the discretion to make the contributions into the retirement system at any time before the fifteenth of the following month. In this regard, the required clear legal and ministerial duty to make immediate payments does not exist.
However, pursuant to R.I.G.L. 1956 §§ 16-16-22 and16-16-22.1, the Union has a legal right to have the contributions made to the retirement system and the School Board has a legal and ministerial duty to make such payments by the fifteenth day of the month following the initial deduction from the teachers' paychecks. The language of R.I.G.L. 1956 § 16-16-22 clearly denotes through the word "shall" that the payment of the employer's contribution to the retirement system must be made by the fifteenth day of the following month. There does not exist any discretion on the part of the School Board as to whether or not to make the payments after the grace period or at all. Since the collective bargaining agreement resulted in the School Board's taking over the responsibility of making the employee contributions in addition to their own employer contribution, R.I.G.L. 1956 § 16-16-22 is once again implicated, and a ministerial duty also then arises in regards to the employee contribution. However, the Union has not sufficiently shown that the writ will be effective or that no other plain and adequate remedy fails to exist.
Under R.I.G.L. 1956 § 16-16-22, the General Treasurer is authorized to deduct the delinquent amount from any money due the city from the state. This provision of the statute seeks to protect the teachers and ensure that their interests are not jeopardized. Although the plaintiffs state that they are unaware of any such deductions by the General Treasurer since the time they entered the retirement system, that fact alone is not sufficient to prove that an adequate remedy does not exist. Also, there has been no showing by the Union that monetary damages would be inadequate. The Union's complaint states that the teachers have been harmed by the School Board's failure to make timely payments to the retirement system in such ways as lost investment income. The nature of such an injury might have as its remedy a damage award not a writ of mandamus.
Finally, the Employees' Retirement System's monthly report for the period ending May 15, 1998, (coincident with the filing of this case) reveals that the School Board was current in both the employee and employer contributions and that there was no outstanding balance due the retirement system. The fact that the School Board has no outstanding obligations means that they have performed their duty. The Union is asking this Court to issue a writ of mandamus to compel the School Board to perform their duty in the future based upon the chance that a payment may not be timely made. Where the School Board has shown a willingness to fulfill their duty and no clear evidence of a likely default on the payments has been offered, this Court will not issue a writ of mandamus.
 The Injunction Issue
An injunction is an extraordinary remedy that requires a party to either do or refrain from doing some act. Brown, 460 A.2d at 10. Before the trial court can exercise its discretion to issue the injunction, the moving party must affirmatively demonstrate that it will suffer immediate and irreparable harm absent the requested injunctive relief; and, also persuade the court that no adequate remedy at law exists. In Re: StateEmployees' Unions, 587 A.2d 919, 925 (R.I. 1991). Once this has been demonstrated, the court must balance the equities between the parties by weighing the relief sought against the harm that the other party would suffer if the injunction was granted. R.I.Turnpike Bridge Authority v. Cohen, 433 A.2d 179, 182 (R.I. 1981). In connection with the balancing, the court must also examine the practicality of imposing the injunction.
Our Supreme Court has also made it clear that the principal prerequisite to obtaining injunctive relief is a finding that the plaintiff is being threatened with some irreparable injury for which he has no adequate remedy at law. Brown. 460 A.2d at 10;Paramount Office Supply Co. v. MacIsaac, 524 A.2d 1099, 1102 (R.I. 1987). The irreparable harm must be either "presently threatened" or "imminent" and, as such, injuries that are prospective and might never occur, cannot form the basis of a permanent injunction. Cohen, 433 A.2d at 182 (citing Ashland Oil.Inc. v. F.T.C., 409 F. Supp. 297, 309 (D.D.C. 1976), aff'd548 F.2d 977 (D.C.Cir. 1977)).
This Court finds that the Union has failed sufficiently to demonstrate that they are likely to suffer an imminent irreparable harm for which no adequate remedy at law exists. The Union seeks to enjoin the School Board's withholding and failing to immediately pay and continue to pay the retirement contributions and other moneys deducted from teachers' salaries. In their complaint, the Union states that they will suffer irreparable harm should the injunctive relief not be granted. However, the only harm presented to this Court is the possible loss of investment income. When questioned as to what would happen if the city did not make the contribution payments, Reilly, at his deposition, stated that there would not likely be a negative impact on the teacher's pension status and, that the teacher's benefit would not be held up or delayed merely because the contribution had not yet been received. (Tr. at 15). Furthermore, although previous Employees' Retirement System's monthly reports indicated some delinquent payments, the report for the period ending May 15, 1998, illustrated that the School Board was current in its contributions and had no overdue payments.
This case is distinguishable from Johnston Federation ofTeachers v. Town of Johnston, MP 97-6181, March 24, 1998, Silverstein, J., a bench decision, wherein this Court granted injunctive relief While both cases involved a collective bargaining agreement providing for payment of the teacher's contributions to the State Retirement Fund by the School Board, only the Johnston Federation of Teachers case concerned a separate agreement. The Town of Johnston and the Johnston Federation of Teachers had entered into separate agreements which stated that if the Town failed to make timely payments to the retirement system and to the designee of other moneys withheld from teachers payroll, the Teachers Union was entitled to a preliminary restraining order, injunctive relief and other appropriate relief compelling the Town's compliance. Decision at 5. In granting the plaintiff's request for relief, this Court found that the Town of Johnston, delinquent in its payments to the State Retirement System, was therefore in violation of the agreement. This Court found that the Town was bound by the provisions of the separate agreements and granted the requested relief.
Since the School Board is current in its payments, any harm which results as the consequence of delinquent payments in the future cannot serve as the basis of the injunctive relief sought since said harm is not imminent, presently threatened, or in violation of an agreement. While the Union may suffer some harm as the result of delinquent payments, it would certainly be possible to compensate such damage. Accordingly, the Union has not demonstrated irreparable harm and the court need not proceed to the balancing analysis.
 The Segregated Bank Account
As part of its requested relief, the Union asks this Court to require the School Board to establish and maintain a segregated bank account into which the gross teacher payroll would be deposited on a continuing basis and from which deductions, such as the retirement contributions, would be made. The Union argues that by allowing the withheld money to remain in the School Fund until the contribution is made, the city is earning interest on the "float" and that such interest earned on funds actually owned by the teachers should be for their benefit rather than for general purposes of the School Board.
In regard to the contribution to the retirement system, R.I.G.L. 1956 § 16-16-22.1, which govern city or town payment of the teacher contributions, merely states that the teacher contributions picked up by the School Board shall be paid from the same source of funds used for the payment of compensation to a teacher member. A requirement that the teacher contributions be deposited into an account other than the School Department's operating account is not mandated by statute. Further, the provision of the collective bargaining agreement that concerns the School Board election to pick up and pay to the Employees' Retirement System of the State of Rhode Island the contributions that would be otherwise payable to the retirement system by its employees does not refer to any requirement regarding another account. No provision mandates that moneys deducted from the teachers' salaries be deposited into an account other than the School Fund until the time arises to make the mandatory payments. Accordingly, as there is no ministerial duty on the part of the School Board to establish and maintain such an account and the moving party has not demonstrated irreparable harm by the maintenance of the current system, this Court will decline under the presently existing circumstances to so order.
For the reasons herein stated, this Court denies the plaintiff prayer for a writ of mandamus, injunctive relief, and the creation of a segregated bank account.
Counsel for the prevailing party shall present an appropriate order and judgment consistent with the provisions of this decision.