**OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION, LOCAL 40**

v.

**CONTRACTING PLASTERERS OF RHODE ISLAND,**

**and**

**A & D Local Union No. 195 Painters and Allied Trades.**

No. 91–489–A.

Supreme Court of Rhode Island.

Feb. 3, 1993.

Richard Skolnik, Lipsey & Skolnik, Providence, for plaintiff.

Girard Visconti, Visconti & Petrocelli, Marc Gursky, Providence, for defendant.

OPINION

SHEA, Justice.

This matter involves the appeal from the Superior Court's order to the defendant to submit to arbitration issues that involve a company that was not a signatory to the contract. We reverse.

The parties in this case are: Operative Plasterers' and Cement Masons' International Association (Operative Plasterers), plaintiff; Contracting Plasterers of Rhode Island (Contracting Plasterers), defendant; and A & D Local Union No. 195, Painters and Allied Trades (Painters), intervenor.

The events giving rise to this litigation began in March 1990, when the owners of Center Place, a development project in Providence, entered into a construction agreement with a general contractor, Morse Diesel (Morse). Pursuant to this agreement Morse subcontracted work out to Ralston Drywall Company. At about the same time Contracting Plasterers, a trade association, and Operative Plasterers entered into a collective-bargaining agreement covering the scope of work jurisdiction.

Albert Magnone is Vice–President of Ralston Drywall Company. He is also Vice–President of a company entitled Ralston Plastering. His affidavit established that the companies are "separate and distinct" Rhode Island corporations. Ralston Plastering is a member of Contracting Plasterers and is therefore subject to the

collective-bargaining agreement with Operative Plasterers. Ralston Plasterers was not hired by Morse to perform any work on the Center Place project. Ralston Drywall, however, is bound by the collective-bargaining agreement it has with defendant, Painters, the intervenor in this case.

Under its subcontract with Morse, Ralston Drywall awarded one phase of its work to Painters.[1] When Operative Plasterers learned of this award, it claimed that Ralston Drywall was bound to give this work to Operative Plasterers and demanded that the work awarded be reviewed by an arbitration proceeding pursuant to Operative Plasterers' collective-bargaining agreement with Contracting Plasterers. Operative Plasterers based its claim on the fact that the name of the subcontractor, Ralston Drywall, is similar to the name of a company that is a member of Contracting Plasterers, Ralston Plastering. Because Ralston Drywall and Ralston Plastering are not the same company, Contracting Plasterers refused to arbitrate with Operative Plasterers because no member of its group had ordered the work in question. Operative Plasterers then brought suit in the Superior Court to compel arbitration.

With only Operative Plasterers and Contracting Plasterers present, a brief hearing was held in Superior Court, after which the trial justice ordered arbitration to proceed following the procedure set out in the collective-bargaining agreement between Operative Plasterers and Contracting Plasterers which called for a four-member arbitration panel, two selected by Operative Plasterers and two by the employers. The trial justice also ordered that Painters and Ralston Drywall be joined as defendants and directed them to participate in the arbitration proceeding. As set forth above, neither Painters nor Ralston Drywall was a party to the collective-bargaining agreement at issue. Also, neither Painters nor Ralston Drywall was present, was informed of, or was formally joined as a party to the Superior Court proceedings.

In due course Contracting Plasterers appealed the order to arbitrate to this court. It filed a motion to stay the Superior Court order, which we granted, and we also granted a motion to intervene filed by Painters.

The issue to be resolved is whether there is an arbitrable issue between Operative Plasterers and Contracting Plasterers arising out of Ralston Drywall's award of work to the Painters. We are of the opinion that there is not.

This court has said, "Arbitration is a contractual matter agreed upon by the parties in their collective bargaining contract. Resolution of the issues of whether a party must submit to arbitration * * * [is] properly within the jurisdiction of a court. * * * We must look to the contract to determine which questions the parties have agreed to submit to arbitration." *School Committee of Pawtucket v. Pawtucket Teachers Alliance,* 120 R.I. 810, 815, 390 A.2d 386, 389 (1978).

Here there is no question that there is no contract between the plaintiff and the defendant. Since "arbitration is a matter of contract * * * a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel Workers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). General Laws 1956 (1986 Reenactment) §§ 28-9-13(2) and 28-9-18(a)(3) gives the state courts the authority to vacate an arbitrator's award when it is not based on a valid contract. Without a contract between the parties there can be no arbitration.

For these reasons the defendant's appeal is sustained, the order appealed from is reversed, and the papers of the case are remanded to the Superior Court with direction that the action be dismissed.

---

1. The disputed work is the application and removal of a new product called Covercoat, which is used to smooth the surface of a primed wall before painting. Its introduction apparently has given rise to disputes between painters' and plasterers' locals in various states.