STATE of Rhode Island, DEPARTMENT OF CORRECTIONS

v.

RHODE ISLAND BROTHERHOOD OF CORRECTIONAL OFFICERS.

No. 2003–313–APPEAL.

Supreme Court of Rhode Island.

Feb. 15, 2005.

Michael B. Grant, Esq., Pawtucket, for Plaintiff.

Gerard B. Cobleigh, Esq., Warwick, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on December 8, 2004, on appeal by the plaintiff, State of Rhode Island, Department of Corrections (state or DOC), from a Superior Court order granting a motion to confirm an arbitration award of the Rhode Island Brotherhood of Correctional Officers (RIBCO) and denying the plaintiff's motion to vacate the award.[1]

### Facts and Travel

It is the status of RIBCO, as the successor union to the American Federation of State, County and Municipal Employees, Council 94 (Council 94), that brings this case before the Court. RIBCO, the collective bargaining representative for state-employed correctional officers (unit 2003 or correctional officer unit), succeeded Council 94 as the bargaining agent for adult counselors employed at state correctional facilities (unit 3506 or professional unit) as a result of a consent election. The state and RIBCO have been parties to a collective bargaining agreement covering the correctional officer unit (CBA 2003) for many years.

Initially, Council 94 was the collective bargaining representative of the profes-

---

1. Although we normally entertain appeals from a judgment, G.L.1956 § 28–9–25 directs that "[a]n appeal may be taken from an order made in a proceeding under this chapter, or from a judgment entered upon an award."

sional unit. All Council 94 bargaining units were covered by a Master Contract (Master Agreement or Master Contract).[2] In 1992, after a consent election involving RIBCO, Council 94, the state, the DOC, and the Department of Children, Youth and Families, the Rhode Island State Labor Relations Board certified RIBCO as the collective bargaining agent for the professional unit.

Rather than draft a new contract, the state and RIBCO entered into a memorandum of agreement (MOA) covering the period from July 1995 through June 1999. The MOA provided that the terms of the Master Agreement would serve as the collective bargaining agreement for the professional unit (CBA 3506), except when the parties agreed to modify it.

In May and again in October 1998, the state posted a vacancy notice for an adult counselor to provide counseling services to adult inmates of state correctional facilities. The October vacancy notice indicated that there was "no [c]ivil [s]ervice [l]ist for this position" and that "collective bargaining union agreement: RIBCO ( [CBA] 3506)" covered this position.

When he applied to fill this vacancy, the grievant, Michael Bouchard (Bouchard or grievant), was a state-employed correctional officer and a member of RIBCO's unit 2003. Instead of the grievant, the state hired an applicant who was not a member of a bargaining unit represented by RIBCO (nonunion applicant). On November 30, 1998, RIBCO filed a grievance contending that, pursuant to CBA 3506, the grievant, although a member of a separate and distinct bargaining unit, should have been awarded the position over the nonunion applicant.[3] On September 16, 1999, the state's human resources coordinator denied the grievance because Bouchard was not a member of unit 3506 and "not entitled to the position[ ] in any case." At the next step in the grievance process, a state hearing officer denied the grievance for the same reasons.[4] When the dispute proceeded to arbitration, the parties stipulated to a bifurcated arbitration hearing in which the issue of the arbitrability of the grievance would be decided first.

Article 11.4d of the Master Agreement provides that "[w]here no list exists for certification, all * * * vacant positions shall be filled from within the bargaining unit wherein the * * * vacant position exists * * *, or if there are less than three eligible employees therein, then from the top three state seniority employees from within any other bargaining units covered by the *Master Agreement*." (Emphasis added.) Pursuant to Article 11.4f, only "[i]f no bids are submitted from any member of a bargaining unit represented by Council 94, then the [s]tate has the right to fill [that position] from outside the bargaining units covered by this Master Agreement."

The arbitrator considered the testimony of the state's labor relations administrator, John Turano (Turano), with respect to the

---

2. The Master Agreement originally served as the collective bargaining agreement for fifty-two units.

3. The grievance stated that:
   "I'm in pursuit of article 1, 2, 10 and other applicable articles of the agreement between RIBCO and the [s]tate. *Under CBA 3506* [,] Mike Bouchard should have received the position of [a]dult [c]ounselor because he is in the same union. A non-bargaining unit member received the job." (Emphasis added.)

4. The state hearing officer denied the grievance on the grounds that the grievant was a member of the correctional officer unit, not the professional unit, and that the grievant was "not entitled by contract to an appointment to the position."

relationship between the MOA and the Master Agreement. According to Turano, the MOA did not modify the Master Agreement " 'to read RIBCO' instead of Council 94," but that " 'all references [to] Council 94 should read RIBCO.' " [5]

After considering the arguments of both parties, the arbitrator concluded that the grievance was arbitrable "because it alleges a violation of the collective bargaining agreement between the State of Rhode Island and RIBCO—the collective bargaining agreement which covers the RIBCO [p]rofessional [u]nit which includes [a]dult [c]ounselors." The arbitrator found that the state and RIBCO adopted the Master Agreement as the collective bargaining agreement governing the terms of employment for employees within the professional unit. He further found that all unions represented by RIBCO succeeded to the contractual rights granted to bargaining units represented by Council 94 under the Master Agreement, including the right to fill vacancies from within bargaining units represented by RIBCO. The arbitrator concluded that, although the grievant cannot reside in two different bargaining units, the Master Agreement, pursuant to the MOA, provides the grievant with cross-bargaining unit benefits.

The arbitrator based his finding of arbitrability on an inaccurate quotation of the language of Article 11.4d of the Master Agreement. Although he initially quoted this article correctly in his award, he misquoted the language of Article 11.4d at a crucial point in his analysis and used it to support his finding that the misquoted provision "grant[s] certain vacancy-filling rights to 'any member of a bargaining unit *represented by Council 94*,' the same vacancy-filling rights now apply to any member of any bargaining unit represented by RIBCO." [6] (Emphasis added.) Thus, by substituting "Council 94" for the term "Master Agreement" and relying upon Turano's testimony that "all references [to] Council 94 should read RIBCO," the arbitrator, by a stroke of the pen, expanded the contractual rights of a bargaining unit wholly unrelated to the Master Agreement and the MOA. We deem this misquotation deliberate and fatal.

On September 11, 2001, the state filed a petition in Superior Court to vacate the arbitrator's award pursuant to G.L.1956 § 28-9-18, and on September 28, 2001, RIBCO filed a petition to confirm the award. On March 28, 2003, the grievant resigned from his position as a correctional officer. On May 22, 2003, the Superior

**5.** Neither party suggests to this Court that the memorandum of agreement modified the content of the Master Agreement to substitute the term "RIBCO" where "Master Agreement" appears.

**6.** We are troubled by the arbitrator's reliance upon misquoted language from the Master Agreement in rendering the arbitration award. He employed the misquoted language to misconstrue the rights and duties agreed upon between the state and RIBCO in the collective bargaining agreement for unit 3506. Article 11.4d of the Master Agreement provides:

"Where no list exists for certification, all new and vacant positions shall be filled from within the bargaining unit wherein the new or vacant position exists from the top three state seniority employees, or if there are less than three eligible employees therein, then from the top three state seniority employees from within any other bargaining units *covered by the Master Agreement*. Whenever there are less than three eligible applicants from within any bargaining units covered by the Master Contract for a vacancy, the [s]tate may re-post such vacancy." (Emphasis added.)

The arbitrator quoted Article 11.4d providing vacancy rights to, "any member of a bargaining unit *represented by Council 94*." (Emphasis added.) The language of Articles 11.4d and 11.4f of the Master Agreement does not mention Council 94.

Court confirmed the arbitration award, and the state timely appealed.

### Issues Presented

On appeal, the state contends that the arbitrator's finding of arbitrability is irrational, and that the arbitrator exceeded his powers by implementing an award that does not draw its essence from the collective bargaining contract. The state argues that the Superior Court erred in confirming the arbitrator's award because the arbitrator based his award on a contract that is inapplicable to this grievant and misquoted the language of the Master Agreement. Finally, the state suggests that the grievance may have been rendered moot because the grievant left his employment with the state and is now employed as a police officer for the Town of Burrillville. RIBCO argues that this appeal is neither ripe nor moot, and that the arbitrator properly exercised his jurisdiction under CBA 3506.

### Ripeness

■ Before this Court, RIBCO contends that, by not securing a judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, this appeal is premature and the case should be remanded for entry of final judgment. The arbitrator has not issued an award on the merits of the controversy, but, pursuant to a stipulation by the parties, only issued an award declaring the grievance arbitrable.

Chapter 9 of title 28 permits a party to a labor arbitration to petition the Superior Court to confirm and/or vacate an arbitrator's award and mandates that the court issue an order either confirming or vacating the award. In contrast, § 28–9–22 directs that a judgment *"may* be entered in conformity with the order," which signals that a judgment is not mandatory. (Emphasis added.) Pursuant to § 28–9–25, "[a]n appeal may be taken from an

order made in a proceeding under this chapter, or from a judgment entered upon an award." We are satisfied that the order of the Superior Court confirming the arbitration award declaring this dispute arbitrable is reviewable on appeal.

■ An arbitration award may be subject to judicial review on the issue of arbitrability, particularly when, as here, the parties agreed to a bifurcated proceeding. For example, in *Providence Teachers Union,* we vacated an arbitrator's award on the sole issue of arbitrability before the arbitrator reached the substantive merits of the grievance. *Providence Teachers Union v. Providence School Board,* 725 A.2d 282, 283 (R.I.1999). The issue of arbitrability is " 'the equivalent of subject matter jurisdiction.' " *Id.* As long as an award has been made, this Court may review it solely on the determination of arbitrability in a bifurcated proceeding, even if the substantive issues surrounding the arbitration have not been decided. To hold otherwise would render a bifurcated hearing in this context a meaningless exercise.

### Mootness

■ The issue of mootness is a closer question. "[A] case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence,* 754 A.2d 89, 90 (R.I. 2000); *see also Sullivan v. Chafee,* 703 A.2d 748, 753 (R.I.1997). "This Court will review an otherwise moot case only if the matter is of extreme public importance and likely to recur in such a way as to evade judicial review." *Associated Builders & Contractors of Rhode Island, Inc.,* 754 A.2d at 90.

For example, in *Seibert v. Clark*, 619 A.2d 1108, 1109 & n. 1 (R.I.1993), plaintiff brought suit against the Rhode Island tax administrator challenging a decal-fee requirement that was imposed only on motor carriers registered outside of Rhode Island. He sought declaratory relief, injunctive relief, and a $20 refund for his decal-fee payments. *Id.* at 1110. A subsequent amendment to the statute eliminated the language exempting vehicles registered in Rhode Island from the decal-fee, and therefore, plaintiff's claims for declaratory and injunctive relief no longer were of any legal significance. *Id.* at 1110–11. Nevertheless, because plaintiff's claim for a refund raised a justiciable controversy, the case was not rendered moot. *Id.* at 1111.

We are satisfied that the grievant's decision to resign from his employment with the state and to accept other employment does not give rise to mootness. If this grievance were decided on the merits, the arbitrator could award the grievant the position of adult counselor, and the grievant could accept this post, even though he has left state employment. Also, there may be an entitlement to back pay should the grievant prevail. Finally, counsel for the state has conceded that, although the possibility is remote, this issue is capable of repetition. Accordingly, despite the grievant's departure from state employment, we are satisfied that the grievant and, therefore, RIBCO hold a continuing stake in the outcome of this controversy.

### Arbitrability

■ Arbitration is a creature of the contract between the parties; the first issue to be decided is whether an arbitrable grievance emanates from the collective bargaining agreement. *Rhode Island Court Reporters Alliance v. State*, 591 A.2d 376, 378 (R.I.1991) (citing *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 570–71,

80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring)). A duty to arbitrate a dispute arises only when a party agrees to arbitration in clear and unequivocal language, and even then, the party is only obligated to arbitrate issues that it explicitly agreed to arbitrate. *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I.1982). A more searching standard of judicial review governs the issue of arbitrability than our limited review of the substantive arbitration award. *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I.1998). The issue of whether a dispute is arbitrable is a question of law that this Court reviews *de novo*. *Stanley–Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 697 A.2d 323, 325 (R.I.1997). When undertaking *de novo* review, "we do not apply the more deferential standard accorded to an arbitrator's interpretation of a CBA on its merits." *Rhode Island Brotherhood of Correctional Officers*, 707 A.2d at 1234. "[A]n arbitration award will be vacated if * * * the issue determined was not arbitrable in the first place." *Id.*

■ If an individual is not a party to the collective bargaining agreement at issue, the dispute is not arbitrable as to that individual. *Operative Plasterers' and Cement Masons' International Association, Local 40 v. Contracting Plasterers of Rhode Island*, 619 A.2d 838, 839 (R.I.1993) (*Operative Plasterers'*). For these parties to engage in arbitration, there must be a contract between them; an arbitration award based upon a contract unrelated to the grievant must be vacated pursuant to § 28–9–18(a)(3). *Operative Plasterers'*, 619 A.2d at 839. Because we look to the contract to determine which questions the parties have agreed to submit to arbitration, whether the grievant falls within its

provisions is of paramount importance. *Id.*

When RIBCO was certified to represent the professional unit, the state and RIBCO, in the MOA, agreed to adopt the terms of the Master Agreement as the collective bargaining agreement for unit 3506. Although the terms and conditions of employment remained the same, the adult counselors no longer were members of Council 94 and no longer enjoyed the intra-union transferability of Council 94's Master Agreement. The MOA did not make RIBCO a party to the Master Agreement between the state and Council 94 but merely recognized a new and distinct collective bargaining agreement— CBA 3506—between RIBCO and the state. Article 1.1 of the Master Agreement states "[u]pon termination of the Council 94 certification for any bargaining unit, the provisions of this Master Contract shall be automatically terminated. The terms of this Master Contract are non-transferable and non-assignable." RIBCO cannot compel the state to arbitrate under the terms of the Master Agreement because RIBCO is not a party to the Master Agreement with the state, and the grievant is not a member of any unit covered by the Master Agreement.

The grievant's attempts to bootstrap unit 2003 into the benefits of Council 94's Master Agreement are without merit. Although CBA 3506, as adopted through the MOA, imports much of the language from the Master Agreement into its terms, including Articles 11.4d and 11.4f, these articles confer hiring benefits upon a member "within any other bargaining units covered by *the Master Agreement.*" (Emphasis added.) The grievant is not a member of a bargaining unit covered by the Master Agreement and therefore, is not entitled to hiring preferences granted under the plain language of the contract, as adopted by the MOA.

■ The grievant argues that, as a member of the correctional officers unit, he is entitled to the benefits of CBA 3506, a separate contract. He is mistaken. As a member of unit 2003, the grievant is covered by CBA 2003. Although RIBCO represents both the correctional officers unit and adult counselors unit, each is subject to a different collective bargaining agreement. There is nothing in the record that remotely suggests that other RIBCO unions, apart from unit 3506, were embraced by the MOA. As a correctional officer, the grievant has no rights under the professional unit contract, and bidding preferences cannot be found by implication. We are not prepared to expand the rights conferred by the adult counselor's collective bargaining agreement to encompass correctional officers simply because each is represented by RIBCO. The terms of a collective bargaining agreement dictate the arbitrability of a labor dispute. This dispute is governed by CBA 2003, the arbitrator's attempt to engage in syllogistic reasoning notwithstanding.

Finally, the grievant's rights arise from CBA 2003, which provides in Article 18.3 that "[o]nly grievances arising out of the provisions of *this* contract relating to the application or interpretation thereof may be submitted to the arbitration board." (Emphasis added.)

We conclude that the arbitration clause in CBA 2003 did not grant RIBCO the power to compel arbitration of the present dispute, nor can arbitrability be based upon a collective bargaining agreement that does not cover the grievant's unit or extend any rights to him. This dispute is not arbitrable, and an award "purportedly resolving nonarbitrable issues must be set aside." *Rhode Island Council 94, AFSCME, AFL–CIO v. State,* 714 A.2d

584, 588 (R.I.1998). "[A]n arbitration award not grounded in the contract between the parties * * * must be vacated." *Id.*

or Court with directions to enter judgment in favor of the State of Rhode Island.

## Conclusion

We vacate the order of the Superior Court and remand this case to the Superi-