May 14, 2018

**Supreme Court**

No. 2017-186-Appeal.
(PM 16-5833)

Town of Cumberland            :

v.                            :

Cumberland Town Employees Union et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2017-186-Appeal.
(PM 16-5833)
(Dissent begins on Page10)

Town of Cumberland       :

v.              :

Cumberland Town Employees Union et al.   :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   Before the Court is an appeal from a Providence County Superior Court hearing justice's decision granting a motion to vacate an arbitration award in favor of the defendants, the Cumberland Town Employees Union and Norman Tremblay (Tremblay) (collectively, the union), brought by the plaintiff, the Town of Cumberland (the town), and denying the union's cross-petition to confirm the same.[1]   This matter came before the Supreme Court on March 8, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown.  Thus, further argument or briefing is not required to decide this matter.  For the reasons outlined below, the Superior Court judgment in favor of the town is vacated, and the case is remanded with instructions to confirm the arbitration award.

---

[1] While the action below named both the union and Tremblay, the notice of appeal to this Court indicates that only the union—and not Tremblay—is appealing the hearing justice's decision.

# I

## Facts[2] and Travel

Tremblay was employed by the town's highway department as a light equipment operator for nearly thirteen years. At all relevant times, a collective bargaining agreement (the CBA) entered into between the town and the union governed his employment. On August 5, 2014, Tremblay "rolled" his ankle at work, tearing tendons and ligaments. As a result, he could not work, and he required surgery to repair the damage before he could resume his position. After encountering numerous health insurance delays, on June 24, 2015, Tremblay underwent his long-awaited surgery, but did not return to work while he was recovering.

During his absence, Tremblay remained a town employee, continuing to pay his union dues and contributing toward his health insurance benefits. Throughout that time, he maintained regular contact with the union, as well as with the town by way of its human resources department. At no point did the town inform Tremblay that he should request a leave of absence, and thus he did not do so.

On November 10, 2015, Tremblay received a letter from the town's human resources department notifying him that his right to seek reinstatement to his position was terminated pursuant to G.L. 1956 § 28-33-47(c)(1)(vi)[3] of the Workers' Compensation Act (the WCA). In

---

[2] These facts are uncontested.

[3] That statute reads, in relevant part: "Notwithstanding subsection (a) of this section * * * [t]he right to reinstatement to the worker's former position under this section terminates upon * * * [t]he expiration of thirty (30) days after the employee reaches maximum medical improvement or concludes or ceases to participate in an approved program of rehabilitation, or *one year from the date of injury*, whichever is sooner * * *." General Laws 1956 § 28-33-47(c)(1)(vi) (emphasis added).

support of that notice of termination, the town relied on the fact that a period in excess of one year had elapsed since his injury.

Three days after Tremblay received the letter, the union filed a grievance on his behalf, arguing that he had been terminated without just cause, in violation of Article 13.1 of the CBA.[4] His grievance was held in abeyance until the conclusion of a separate workers' compensation suit. Once that suit resolved, Tremblay followed the procedure for filing a grievance dictated in Article 4 of the CBA;[5] based on that article, he brought his grievance first to the town's human resources department and then to the mayor. Each denied his grievance. Dissatisfied, the union

---

[4] Article 13.1 recites, in relevant part: "Disciplinary action may be imposed upon an employee only for just cause."

[5] Article 4.2 reads, in relevant part: "Any employee(s) who have a grievance must submit the grievance in writing to the Union within seven (7) calendar days of the aggrieved's knowledge of said violation, or it shall not be considered a grievance under the terms of this Agreement."

Article 4.3 continues:

"There shall be a grievance procedure as follows:

"1. Any employee who is aggrieved has the right to discuss his/her grievance with his/her immediate supervisor with or without his/her Union Representative present. * * *.

"2. In the event the grievance is not resolved with his/her immediate supervisor, the aggrieved and or [*sic*] his/her Union Representative shall submit his/her grievance in writing to the official and send a copy to the Human Resources Department. * * *.

"3. In the event the grievance is not satisfactorily resolved with the department head, the aggrieved and/or his/her Union Representative shall submit the grievance to the Mayor. * * *."

filed an arbitration demand on Tremblay's behalf pursuant to Article 4.4 of the CBA.[6]  In the interim, on May 4, 2016, Tremblay was formally cleared to return to work.

An arbitrator conducted a hearing regarding Tremblay's grievance on August 11, 2016, framing the relevant issues as (1) whether the grievance should be sustained; and (2) if so, what should be the appropriate remedy?  The town argued primarily that the grievance was not arbitrable because § 28-33-47(d) grants the Workers' Compensation Court exclusive jurisdiction over reinstatement disputes.  Further, the town maintained that, per the WCA, Tremblay had lost his right to reinstatement as a matter of law when his absence exceeded one year, thus he no longer had an arbitrable claim for reinstatement.  It continued that because "the termination actually occurred by operation of law and not by action of the [t]own, * * * Tremblay's quarrel is with the law, not the [t]own."  Based on that contention, the town asserted that, to dispute his termination, Tremblay must challenge § 28-33-47(c)(1)(vi) in Workers' Compensation Court to restore his reinstatement right because, absent that right, there was no contract right upon which the town could infringe.

The union countered that the town violated the CBA by terminating Tremblay without just cause because Article 20.2 of the CBA[7] contemplated a leave of absence of up to two years.[8]  The union avowed that the WCA "specifically preserves superior contractual rights, and leaves intact contractual claims to enforce those right[s]."  Moreover, the union asserted that, while the

---

[6] Article 4.4 reads, in relevant part: "If the grievance is not satisfactorily resolved with the Mayor, it may be submitted to the American Arbitration Association in accordance with its rules then obtaining unless the parties mutually agree to an alternative method of resolution."

[7] Article 20.2 provides, in pertinent part, that: "Seniority shall be retained and shall accumulate during all leaves without pay, provided however, that in no case shall a leave of absence be granted for a period of more than two (2) years."

[8] Further, the union cites Article 3.8 of the CBA, which provides, in relevant part: "Seniority shall be considered lost for the following reasons: * * * When an employee has been discharged for just cause."

WCA grants a one-year reinstatement right, "it does not trump the more generous provision of the CBA[,]" citing to § 28-33-47(b) of the WCA in support of that principle.[9]

In a written decision on December 13, 2016, the arbitrator concluded that Tremblay's grievance was arbitrable. His decision explained that the grievance had merit because "[b]efore November 10 there [was] no indication that the [t]own did not consider Tremblay covered by the [CBA] and entitled to the protections of the [CBA]." He opined that Tremblay was still entitled to the benefits that the CBA afforded him because he "never ceased to be regarded as an employee and was not seeking reinstatement as contemplated by the statute." In closing, he directed the town to reinstate Tremblay with full back pay and without the loss of benefits.

In Providence County Superior Court, the town petitioned to stay and to vacate the arbitration award, and the union filed a cross-petition to confirm and to enforce the same. On January 31, 2017, a Superior Court hearing justice heard argument on the motions. On February 23, 2017, he issued a written decision granting the town's motion to vacate the award, explicating that the language of the statute clearly and unambiguously gave the Workers' Compensation Court exclusive jurisdiction over reinstatement disputes. He further explained that the CBA's seniority provision protected only an injured worker's right to return to the same level of seniority and did not serve as authority whereby the CBA could supersede the WCA's jurisdictional grant. The union timely appealed to this Court.

---

[9] That statute reads as follows:

> "The right of reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer and a representative of the employer's employees, and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and chapter 87 of title 42." Section 28-33-47(b).

- 5 -

## II

## Standard of Review

Although "judicial authority to review or to vacate an arbitration award is limited, [this Court] must * * * [vacate] the award * * * [when] the arbitrator or arbitrators exceed * * * their powers." *State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d 465, 468 (R.I. 2000) (quoting *Rhode Island Council 94, AFSCME, AFL-CIO v. State*, 714 A.2d 584, 587-88 (R.I. 1998)). "One sure way for an arbitrator to exceed his or her powers is to arbitrate a dispute that is not arbitrable in the first place." *Id.* In analyzing whether an issue is arbitrable, "[a] more searching standard of judicial review governs * * * than our limited review of the substantive arbitration award." *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I. 2005). Arbitrability is a question of law that we review *de novo*. *Id.*

In cases where arbitrability precipitates a question of statutory interpretation, it is also relevant to note that "when a statutory section is clear and unambiguous, we apply the plain and ordinary meaning of the statute and we need not delve into any further statutory interpretation." *Grasso v. Raimondo*, 177 A.3d 482, 489 (R.I. 2018).

## III

## Discussion

In properly focusing our inquiry, we must carefully narrow the issue that is before us. To do so, we turn to the salient language of the relevant WCA provision.[10]

---

[10] Although it was not argued either below or before us, to be clear, we note that the WCA's exclusivity provision, which is set forth by G.L. 1956 § 28-29-20, does not bar Tremblay's grievance. In pertinent part, that provision reads:

The entirety of § 28-33-47(d) reads as follows:

> "Any violation of this section is deemed an unlawful employment practice. *If the employee applies for reinstatement under this section* and the employer in violation of this section refuses to reinstate the employee, the workers' compensation court is authorized to order reinstatement and award back pay and the cost of fringe benefits lost during the period as appropriate. Determinations of reinstatement disputes shall be rendered by the workers' compensation court in accordance with this section and chapters 29 – 38 of this title, and the rules of practice of the workers' compensation court." (Emphasis added.)

"When * * * statutory language is 'clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *McCain v. Town of North Providence ex rel. Lombardi*, 41 A.3d 239, 243 (R.I. 2012) (quoting *State v.*

---

> "The right to compensation for an injury under chapters 29 – 38 of this title, and the remedy for an injury granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees * * *."

"[T]he scope of the exclusive-remedy doctrine as embodied in workers' compensation law depends upon whether the alleged work-related injury is one for which the applicable workers' compensation statute provides a compensation remedy." *Nassa v. Hook-SupeRx, Inc.*, 790 A.2d 368, 372 (R.I. 2002). Further, "[t]he underlying purpose of the [WCA] is to compensate most injured employees adequately on the basis of a calculation of their actual wages." *Bailey v. American Stores, Inc./Star Market*, 610 A.2d 117, 119 (R.I. 1992). However, the WCA's remedial purpose has no footing when the grievant's claim is based upon a CBA, and not the WCA. For that same reason, we sever our discussion of the exclusivity provision from the body of this opinion to assure the reader that it, in fact, is not as the dissent indicated "the very issue before the Court."

As discussed at length herein, the union asserted that Tremblay was terminated *in violation of the CBA*, not the WCA. Moreover, we have held that the Workers' Compensation Court "is not authorized to sit as a labor court and interpret the provisions of a collective bargaining agreement." *Peloquin v. ITT Hammel-Dahl*, 110 R.I. 330, 332, 292 A.2d 237, 239 (1972). Because the union's claim would require the Workers' Compensation Court to do just that, the WCA's exclusivity provision does not estop his grievance. The dissent's desired resolution of this case—that is, for us to hold that the Workers' Compensation Court is the appropriate body to determine whether an employee was terminated for just cause—would nullify bargained-for rights of the CBA and treat the issue before us as a claim for compensation, and not as a labor dispute.

- 7 -

*Gordon*, 30 A.3d 636, 638 (R.I. 2011)). As emphasized in the aforementioned statute, its application is triggered when an employee applies for reinstatement "*under this section*." Section 28-33-47(d) (emphasis added). Yet, the union asserted that Tremblay was terminated without just cause *in violation of the CBA*. Specifically, the union argued that the CBA's two-year allotted absence, rather than the one-year absence afforded by the WCA, applied to Tremblay.

In fact, it would have been fruitless for the union to bring Tremblay's reinstatement action under § 28-33-47(d). Before the hearing justice, the union's counsel agreed with the town's counsel that reinstatement rights under the WCA expired after one year. The union's counsel continued that, based on that one-year limit, it would have been "absurd" for the union to argue that Tremblay was entitled to relief in Workers' Compensation Court. We echo that, had the union claimed that Tremblay was entitled to reinstatement under the WCA, that action would have been legally dead on arrival.

As such, the union did not seek Tremblay's reinstatement "under this section" of the WCA, but rather based on rights that the union insisted the CBA afforded Tremblay beyond those delineated in the WCA. Thus, because the union did not bring Tremblay's grievance in reliance on this statute, we hold that the statute has no bearing on the decision to arbitrate the dispute.

Still, we must address whether the union's contention—that the CBA granted Tremblay greater rights than the WCA—was one that the arbitrator could properly decide. As it stands, our caselaw highlights that an arbitrator "exceed[s] his or her powers by interpreting a CBA in such a way that it contravenes state law * * *." *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I. 1998). We have held that "state law

will trump contrary contract provisions when the statute provides for nondelegable or nonmodifiable duties and responsibilities in connection with the functions of state government. * * * But there must be a *direct conflict* between the statutory language and a competing contractual provision." *State (Department of Administration) v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409*, 925 A.2d 939, 945 (R.I. 2007) (emphasis added).

In the case before us, we are of the opinion that the WCA and the CBA can coexist in that the provisions at issue are not mutually exclusive. We have never held that a CBA cannot afford more rights than state law; in fact, quite the opposite is true. If "there exists 'a valid and an enforceable collective-bargaining agreement whose terms provide greater * * * benefits than is afforded by the special legislation,' * * * [then] the provision of the collective bargaining agreement takes precedence over the special act." *Webster v. Perrotta*, 774 A.2d 68, 81-82 (R.I. 2001) (quoting *Chester v. aRusso*, 667 A.2d 519, 521 (R.I. 1995)). That the CBA grants employees—like Tremblay—greater benefits than the WCA is an exhibition of the parties' freedom of contract, which should not be statutorily abridged in this case.[11]

In sum, applying § 28-33-47(d) as written, our conclusion is that the union necessarily sought Tremblay's reinstatement under the CBA. *See McCain*, 41 A.3d at 243. Accordingly,

---

[11] While recognizing the paucity of cases having precedential value, we find comfort in knowing that the Appellate Division of the Workers' Compensation Court has similarly held that "when a collective bargaining agreement exists, the statute shall not apply." *Turcotte v. Stop & Shop Companies, Inc.*, W.C.C. No. 95-01307 (App. Div. 1995); *see also Rossi v. State of Rhode Island*, W.C.C. No. 97-05577 (App. Div. 1998) ("This Appellate Division, in a recent case, specifically considered whether or not a trial judge could adjudicate a dispute regarding the collective bargaining rights of the employee in the context of a workers' compensation case. Overturning the trial judge, this appellate panel held it could not[.]").

because the union did not seek Tremblay's reinstatement under § 28-33-47(d), we hold that the action was arbitrable.[12]

**IV**

**Conclusion**

For these reasons, we vacate the judgment of the Superior Court. The case is remanded to Superior Court with instructions to reinstate the arbitrator's decision.

**Justice Goldberg, with whom Chief Justice Suttell joins, dissenting.** Because I am of the opinion that the issues in this case have been exclusively and unequivocally committed by the General Assembly to the Workers' Compensation Court, I respectfully dissent. This is a workers' compensation case, not an arbitrable labor dispute between the Town of Cumberland and the Cumberland Town Employees Union. The employee, Norman Tremblay (Tremblay), suffered a work-related injury to his ankle on August 5, 2014. Surgery to correct the injury was not performed until June 2015, allegedly because of the recalcitrance of the town's insurer in approving the surgery. In any event, on November 10, 2015, fifteen months after the date of the injury and five months after the surgery, Tremblay was notified by the town that his right to reinstatement terminated in accordance with G.L. 1956 § 23-33-47(c)(1)(vi) because more than one year had elapsed since the date of his injury and, according to the town, Tremblay remained

---

[12] Although the bulk of the parties' argument focused on arbitrability, we pause briefly to remark that we agree with the hearing justice that the town did not assert any argument other than arbitrability that would justify setting aside the award. *See State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 115 A.3d 924, 928 (R.I. 2015) (reiterating that we have "no authority to vacate [an] arbitrator's award absent a manifest disregard of a contractual provision, a completely irrational result, a decision that is contrary to public policy, or an award that determined a matter that was not arbitrable in the first place." (quoting *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 64 A.3d 734, 739 (R.I. 2013))).

- 10 -

"unable to return because of his injury." It is undisputed that the employee suffered a compensable work-related injury and did not seek reinstatement at any time before the November 2015 letter from the town.

The law is quite clear. The statute is unambiguous: "Determinations of reinstatement disputes *shall* be rendered by the workers' compensation court in accordance with this section and chapters 29–38 of this title, and the rules of practice of the workers' compensation court." Section 28-33-47(d) (emphasis added). This provision and the exclusivity provision of the Workers' Compensation Act render this dispute nonarbitrable as a matter of law.

Section 28-29-20, the exclusivity provision of the Workers' Compensation Act, provides as follows:

> "The right to compensation for an injury under chapters 29–38 of this title, and the remedy for an injury granted by those chapters, shall be in lieu of *all rights and remedies as to that injury* now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees; and those rights and remedies shall not accrue to employees entitled to compensation under those chapters while they are in effect, except as otherwise provided in §§ 28-36-10 and 28-36-15." (Emphasis added.)

In my opinion, the language "all rights and remedies" means just that—"remedies * * * existing * * * at common law or otherwise * * * shall not accrue to employees entitled to compensation" under the Workers' Compensation Act. The General Assembly has not promulgated any exception to this time-honored provision.[13]

---

[13] In a footnote, the majority seeks to avoid the mandate of the exclusivity provision, § 28-29-20, by concluding that the grievant's claim was based on the collective bargaining agreement. I respectfully suggest that the authority of the arbitrator to entertain that grievance or whether it belongs in the Workers' Compensation Court is the very issue before the Court and should not be resolved in a footnote.

Moreover, the Court's citation to *Peloquin v. ITT Hammel-Dahl*, 110 R.I. 330, 292 A.2d 237 (1972), is misplaced. In 1992, the Legislature enacted a comprehensive reform of the

- 11 -

In its filings in this case, the town indicated that it relied upon § 28-33-47 of the Workers' Compensation Act when it denied the grievance, and asserted that it was not arbitrable. The town continues to reiterate its position that the resolution of reinstatement disputes arising from the termination of an employee's right to reinstatement is confined to the Workers' Compensation Court according to the plain language of § 28-33-47(d). The trial justice concluded that "[t]he plain and ordinary meaning of § 28-33-47(d) is inescapable: 'Determinations of reinstatement disputes *shall be rendered by the workers' compensation court*.'" (Emphasis in original.) The word "shall" is mandatory; there are no exceptions. *Shine v. Moreau*, 119 A.3d 1, 13 (R.I. 2015).

One need only look to the decision of the arbitrator to discern the error in the majority's *de novo* finding that this is an arbitrable controversy. In his award, the arbitrator declared that the town "shall *reinstate* Norman Tremblay to his position in the Highway Department with full back pay and no loss of benefits commencing from the date he was *medically released* to return to his position." (Emphasis added.)

This Court has steadfastly held that statutory responsibilities may not be bargained away because the parties to a collective bargaining agreement "have no legal authority to contravene state law by word or deed." *State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d 465, 469 (R.I. 2000). Simply put, to the extent that the collective bargaining agreement between the parties even addresses the right to reinstatement after a work-related injury—which it does not—state law trumps "contrary contract provisions, contrary practices of the parties, and contrary arbitration awards." *Id.* The mandate set forth in

Workers' Compensation Act and textually committed the resolution of reinstatement disputes to the Workers' Compensation Court, to be decided in accordance with chapters 29 through 38 of title 28, which includes the time-honored exclusivity provision.

§ 28-33-47(d) is inescapable—reinstatement determinations arising from a compensable work-related injury "shall be rendered by the workers' compensation court[,]" the arbitrator's factual gyrations notwithstanding.

The arbitrator's decision finding that the grievance was arbitrable is baffling. Arbitrability is a question of law that is reviewed *de novo*. *See State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I. 2005). Although this Court accords great deference to an arbitrator's factual conclusions, no one, not even an arbitrator, is entitled to his own facts. The arbitrator found that the town's letter to Tremblay "purporting to terminate his employment is premised on the claim that Tremblay was seeking reinstatement or claimed reinstatement rights under the statute." It is undisputed that the employee was disabled from a work-related injury, was receiving workers' compensation benefits, and made no claim for reinstatement, timely or otherwise. The arbitrator also made the remarkable declaration that,

> "I read the law as presupposing that the employee has already lost the status of an employee after her [*sic*] injury and is seeking reinstatement rights under the provisions of the statute. I do not read the statute as expressly authorizing the termination of an employee's rights under a labor agreement where the agreement expressly protects the employee's seniority rights, has negotiated leave provisions and allows employees to supplement their worker's [*sic*] compensation income with sick leave pay in some fashion."

For an arbitrator to declare that an injured worker has lost the status of an employee after an on-the-job injury in order to pigeonhole an otherwise nonarbitrable dispute into an arbitrable labor controversy points to the correctness of the trial justice's well-reasoned decision. Workers do not lose their status as employees because they sustain a work-related injury. In enacting

§ 28-33-47(d), the General Assembly declared its intention to protect the rights of injured workers in the labor force.  That section provides:

> "Any violation of this section is deemed an unlawful employment practice. If the employee applies for reinstatement under this section and the employer in violation of this section refuses to reinstate the employee, the workers' compensation court is authorized to order reinstatement and award back pay and the cost of fringe benefits lost during the period as appropriate. Determinations of reinstatement disputes shall be rendered by the workers' compensation court in accordance with this section and chapters 29–38 of this title, and the rules of practice of the workers' compensation court."

The trial justice also soundly rejected the union's contention that the seniority rights provision of § 28-33-47(b) renders the grievance arbitrable.  That section provides that an injured worker's "*right of reinstatement* shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement * * *."  Section  28-33-47(b) (emphasis added).  The trial justice declared that § 28-33-47(b) "simply protects employees' seniority rights during any absence stemming from a compensable injury if the collective bargaining agreement so provides."   The trial justice carefully examined the seniority provision in conjunction with § 28-33-47 in its entirety, namely: (1) "A worker who has sustained a compensable injury shall be reinstated * * *." (§ 28-33-47(a)); (2) "The right to reinstatement * * * terminates upon" specified conditions (§ 28-33-47(c)(1)); (3) "Any violation of this section is deemed an unlawful employment practice." (§ 28-33-47(d)); and (4) "Determination of reinstatement disputes shall be rendered by the workers' compensation court * * *." (§ 28-33-47(d)).

The trial justice then concluded that this dispute was nonarbitrable because the seniority provision of a collective bargaining agreement does not "supersede the Workers' Compensation Court's jurisdiction over reinstatement disputes or extend the [o]ne [y]ear [l]imit."  I agree.

Finally, the majority "find[s] comfort" in two unpublished and unappealed decisions of the Appellate Division of the Workers' Compensation Court that made passing reference to collective bargaining agreements in the workers' compensation context. In *Rossi v. State of Rhode Island*, W.C.C. No. 97-05577 (App. Div. 1998), the Appellate Division, citing the exclusivity provision, declared that this Court "has made it plain beyond dispute that the Workers' Compensation Court is the forum for workers' compensation controversies between the employer and the employee." In *Turcotte v. Stop & Shop Companies, Inc.*, W.C.C. No. 95-01307 (App. Div. 1995), the Appellate Division held that the reinstatement provision of the Workers' Compensation Act was subordinate to a collective bargaining agreement that provided less protection to the injured worker; that agreement read:

> "In the event that an employee is unable to work due to sickness, pregnancy or accident, the employee shall be re-employed at such time as the employee is able to resume his normal duties, provided that the employee is able to resume such duties within 6-months."

Although this provision fails to address work-related injuries, the Appellate Division decreed that § 28-33-47(b), which provided that the "right to reinstatement shall be subject to * * * employment restrictions contained in a valid collective bargaining agreement," was subordinate to the contract. What is most important about these cases, however, is that they were decided in the Workers' Compensation Court, where they belonged.

There is another unpublished decision, from the Superior Court, that was relied upon by the town at the arbitration hearing and was soundly rejected by the arbitrator in light of this Court's pronouncements that unpublished opinions have no precedential value. Nonetheless, *Catholic Cemeteries v. R.I. Laborers District Council*, No. 04-6148, 2005 WL 957734 (R.I. Super. Ct. Apr. 22, 2005), is directly on point and is a judicial declaration that harmonized an employee's right to reinstatement under the Workers' Compensation Act and a collective

- 15 -

bargaining agreement. The employee in *Catholic Cemeteries* was terminated after a prolonged absence from work for a work-related injury and was also accused of making threats against his employers. An arbitrator ordered his reinstatement and rejected the employer's argument that the dispute was not substantively arbitrable. The arbitrator found that the employee was terminated without just cause, and he was reinstated to his position. The Superior Court justice vacated the award on the ground that the grievance was not arbitrable. He found unpersuasive the arbitrator's reliance on the seniority provision set forth in § 28-33-47(b). The Superior Court justice rejected the arbitrator's interpretation of § 28-33-47(b) that a grievant's right to reinstatement "shall be determined solely by the provisions of the collective bargaining agreement between the relevant parties." The trial justice cogently reasoned that the employee failed to act within the time requirement of the Workers' Compensation Act, and that his failure to do so was fatal. "Reading § 28-33-47 in its entirety, it is apparent to this Court that reinstatement of an injured worker is arbitrable under a collective bargaining agreement only if the grievant has followed the procedures set forth in the Workers' Compensation Act." *Catholic Cemeteries*, 2005 WL 957734, at \*4. The Superior Court justice concluded that "there was no right of reinstatement that could be subject to the terms of the collective bargaining agreement because any such right had already expired." *Id.* He vacated the arbitration award.

Accordingly, because I am of the opinion that Tremblay's right to reinstatement to his position with the Town of Cumberland terminated when he failed to seek reinstatement after one year from the date of his injury, and because I am satisfied that reinstatement decisions must be resolved in the Workers' Compensation Court, I conclude that the grievance was not arbitrable and that the trial justice's decision should be affirmed. Consequently, I dissent.

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Town of Cumberland v. Cumberland Town Employees Union et al. |
| **Case Number** | No. 2017-186-Appeal. (PM 16-5833) |
| **Date Opinion Filed** | May 14, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Dylan B. Conley, Esq. |
| | For Defendants:<br><br>Elizabeth A. Wiens, Esq.<br>Marc B. Gursky, Esq. |