Frank BROWN, Jr.

v.

Sarah AMARAL.

No. 80–399–Appeal.

Supreme Court of Rhode Island.

May 10, 1983.

Raul L. Lovett, Lauren E. Jones (on brief), Providence, for plaintiff.

Normand G. Benoit, Providence, for defendant.

## OPINION

SHEA, Justice.

The event precipitating this action occurred when Sarah Amaral, the then Bristol Town Administrator (Amaral or the administrator), dismissed Frank Brown (Brown or the chief) as the Bristol Police Chief. Following his dismissal, Brown requested a hearing before the Bristol Personnel Board (the board). The board held that his dismissal was politically motivated. It ordered Brown reinstated without loss of pay. The administrator refused to comply with the board's order and later issued an order to police personnel, directing that they not allow the chief to enter any part of the police station except the front foyer. Thereafter, Brown brought this action in the Superior Court, seeking injunctive relief to forbid the administrator from interfering with his duties as chief of police and seeking also a writ of mandamus directing the administrator to implement the order of the personnel board. The trial justice dismissed the complaint on the ground that the board lacked jurisdiction to act on Brown's dismissal. The court held that the proper means of resolving the matter was through the grievance and arbitration procedures of the collective-bargaining agreement then in force.

Brown filed the notice of appeal in this case, and at the same time he brought suit in the United States District Court for the District of Rhode Island under 42 U.S.C.A. § 1983 (West 1981) alleging a deprivation of his civil rights arising out of his dismissal. Apparently, to avoid a pleading of res judicata by Amaral in the federal proceedings, Brown obtained an order remanding the case from this court back to the Superior Court so that the trial justice could consider a motion for relief from judgment under Rule 60(b)(6) of the Superior Court Rules of Civil Procedure and a motion for leave to file an amended complaint under Rule 15. The amended complaint would contain a new count based on an alleged deprivation of civil rights. The trial justice denied these motions. Before us, Brown now challenges the trial justice's original determination that the board lacked jurisdiction and the subsequent order denying the motions he filed on remand from this court. We affirm.

On April 28, 1980, Brown received a letter from Amaral relieving him of his duties as chief of police. The administrator's reasons cited in the letter for dismissing the chief included: (1) his handling of the cash proceeds from photocopies made at the police station, (2) his participation in illegal lot-

tery sales, (3) his calling of a false alarm, and (4) his attempt to extract cash advances made to a police officer. Affidavits of three Bristol police officers, Brown's secretary, and a local tavern owner substantiating these claims were attached to the letter.

Brown contested his dismissal by requesting a hearing before the Bristol Personnel Board pursuant to Article Twelve, section 1205 of the Bristol Home Rule Charter.[1] Section 1206 of that same document, however, also provides that the provisions of the home rule charter do not operate to alter collective-bargaining agreements.[2] At the time of his dismissal, Brown was a member of local No. 304 of the International Brotherhood of Police Officers which had a collective-bargaining agreement in effect with the town. The agreement provided that when an employee or the union has a grievance, that grievance first must be brought to the attention of the union steward and the police chief. If the union and the chief are unable to resolve the problem, it should then be brought to the attention of the town administrator. If the town administrator cannot resolve the grievance within fifteen days, the agreement provides that the parties shall submit it to arbitration.[3]

---

1. "1205. DEMOTIONS, DISMISSALS AND SUSPENSIONS. No permanent employee of the Town within the coverage of the personnel system may be demoted, dismissed, suspended for a period longer than ten working days, or suspended more than once within any six month period for disciplinary reasons, unless his work or misconduct so warrants, provided however, that in the event of lack of work or lack of funds, appropriate reductions in personnel may be accomplished in such just and equitable manner as may be provided for in the personnel rules.

(A) In the event that an appointing authority decides to demote, dismiss, or suspend an employee for more than ten working days, or suspends an employee more than once within any six month period, he shall file with the employee and with the Personnel Board a written notification containing a statement of the substantial reasons for the action. Said employee shall then be entitled to demand a hearing before the Personnel Board, which hearing shall be initiated and conducted under such rules and procedures as may have been established by ordinance. If the Personnel Board finds the action of the appointing authority was based on political, religious, or racial prejudice, or finds a procedural irregularity in the dismissal, the employee shall be reinstated to his former position without loss of pay. In all other cases the board's findings and recommendations shall be advisory in nature, and the appointing authority may affirm the original action or modify it pursuant to the Board's recommendations."

2. "1206. UNION AGREEMENTS. Nothing in this article is to be interpreted as altering agreements reached through negotiation between the Town and the recognized union and association representatives relative to prescribed procedures of appeal and arbitration of grievances."

3. Article XVI section 1, of the agreement contains the grievance procedure, which provides:

"For the purpose of resolving alleged grievances of the Union and/or the employees of the Bristol Police Department covered by this Agreement's recognition section, the following grievance procedure shall be followed:

(A) When an employee and/or the Union feels he has a grievance, he shall in writing, within seventy-two (72) hours, bring it to the attention of the Steward of the Union and the Chief of Police. In the event that the Union and the Chief of Police are unable to resolve the alleged grievance or issues to the satisfaction of both parties within ten (10) days, then the grievance shall be brought, in writing, to the Town Administrator by the Union. The Town Administrator shall act on the alleged grievance as soon as possible. In the event that the Union and the Town Administrator are unable to resolve the alleged grievance or issue to the satisfaction of both parties to this Agreement within fifteen (15) days of its submission to him, then any and all grievances or issues shall be submitted to arbitration.

(B) It is expressly understood by the parties hereto that the employees of the Bristol Police Department covered by said recognition section shall have no right to engage in any work stoppage, slowdown or strike. Any and all issues or grievances shall be resolved by the grievance and arbitration procedures set forth herein.

(C) It is agreed that if any employee of the Bristol Police Department, as defined in this Agreement's recognition section, is suspended from duty or discharged, such action shall be subject to determination by the Town Administrator and, in the event he is reinstated to duty by the Town Administrator for the period of suspension or discharge or any part thereof, all wages due to the employee for all hours lost from work shall be paid as soon as possible.

(1) A probationary employee shall not have the right to grieve any disciplinary action, including termination."

The trial justice determined that because Brown should have submitted his grievance to arbitration, the board did not have jurisdiction to hear and act on his complaint. On appeal, Brown claims that the trial justice erred in dismissing his complaint.

In the Superior Court action, Brown sought both injunctive relief and a writ of mandamus. A plaintiff who brings an action for a writ of mandamus "must show that he has a clear right to have done the act he seeks and that the defendant has a clear, legal and ministerial duty to perform without any discretion to refuse." *Warren Education Association v. Lapan,* 103 R.I. 163, 167–68, 235 A.2d 866, 869 (1967); *see also Warwick School Committee v. Gibbons,* R.I., 410 A.2d 1354, 1357 (1980). An injunction, on the other hand, is an extraordinary remedy that requires a party to either do or refrain from doing some act. The main prerequisite to obtaining injunctive relief is a finding that the plaintiff is being threatened by some irreparable injury for which he has no adequate legal remedy. *Rhode Island Turnpike & Bridge Authority v. Cohen,* R.I., 433 A.2d 179, 182 (1981). The granting of an injunction is a matter within the sound discretion of the trial justice. *DeNucci v. Pezza,* 114 R.I. 123, 130, 329 A.2d 807, 811 (1974). Thus, in order to have prevailed below on the mandamus claim, Brown had to prove that the administrator had a legal and ministerial duty to enforce the decision of the board. In order to obtain injunctive relief, he had to convince the trier of fact that he was threatened by an irreparable injury for which there was no legal remedy. He was unable to establish his right to either remedy.

Brown contends that the real issue in this case involves a conflict between the home rule charter and the collective-bargaining agreement. Amaral asserts that Section 1206[4] of the charter defers jurisdiction of the board to any grievance procedures contained in existing union agreements. Brown, on the other hand, contends that § 1206 does not preclude the board from exercising its jurisdiction, but rather, contemplates that the charter provides an additional grievance procedure to that contained in the collective-bargaining agreement.

Article XVI of the collective-bargaining agreement specifically states that "any and all issues or grievances *shall* be resolved by the grievance and arbitration procedures set forth herein." (Emphasis added.) "The word 'shall' usually connotes the imperative and contemplates the imposition of a duty, unless the particular context and plan require a contrary meaning." *Carpenter v. Smith,* 79 R.I. 326, 334–35, 89 A.2d 168, 172–73 (1952). No such contrary meaning is evident in the record before us.

Article XVII of the agreement prescribes the method of arbitration. Each party selects an arbitrator, who in turn participates in selecting the third arbitrator. If the arbitrators selected by the parties fail to agree on the third arbitrator within the specified period, either party may petition the American Arbitration Association to select the arbitrator who then becomes chairman of the arbitration board. In addition, section 2 of article XVII specifies that "a majority decision of the arbitrators shall be final and binding on both parties * * *."

It is clear from the language of the contract that the parties agreed that they would resolve all disputes through arbitration. This court has enunciated a policy in favor of resolving any doubt in favor of arbitration. *School Committee of Pawtucket v. Pawtucket Teachers Alliance,* 120 R.I. 810, 815, 390 A.2d 386, 389 (1978). In that case, this court stated:

"In determining the arbitrability of a dispute, however, the Supreme Court, in the famous Steelworkers' Trilogy, has held that a court shall rule in favor of submitting the dispute to arbitration unless the arbitration clause of the collective bargaining agreement cannot be interpreted to include the asserted dispute, and that

4. *See* footnote 2, *supra.*

all doubts should be resolved in favor of arbitration." *Id.*

■ Brown does not deny that there is a general policy in favor of arbitration when the parties have so contracted. His position is that the parties never intended the chief of police to be subject to the grievance and arbitration procedures. In support of this position, he contends that the agreement is ambiguous because he is both a member of the bargaining unit and a party to the grievance procedure. This argument is without merit.[5] We see no ambiguity. The chief is not a party to all of the grievance procedure, but merely a participant in the first step of the procedure. He does not participate in any of the other steps, including arbitration. Even if we concluded that the agreement was ambiguous, we would resolve that ambiguity in favor of submitting the grievance to arbitration. *School Committee of Pawtucket v. Pawtucket Teachers Alliance,* 120 R.I. at 815, 390 A.2d at 389.

The chief also contends that the administrator may not collaterally attack the board's decision regarding jurisdiction. Because the chief did not include a transcript of any arguments made in the Superior Court, we do not know if he orally advanced this argument to the court. However, from a review of the memoranda submitted to the Superior Court, we do know that Brown failed to raise this issue below. "The only questions entitled to review in the Supreme Court are those which have been raised in the court below." *Aiudi v. Baillargeon,* 121 R.I. 454, 465, 399 A.2d 1240, 1246 (1979). There is, therefore, no basis for reviewing that contention on appeal.

■ Finally, the chief contends that the trial justice abused his discretion in denying his motion for relief from judgment under Rule 60(b)(6) and his motion to amend the complaint pursuant to Rule 15. He acknowledges in his brief, however, that

the only real question before this court is whether an abuse of discretion occurred on the Rule 60(b)(6)-motion determination. If the judgment is not reopened, we need not consider the request to amend. Rule 60(b) authorizes relief from the operation of a judgment because of mistake, inadvertence, or surprise. A motion for relief from judgment is addressed to the trial justice's sound judicial discretion, and his ruling will not be disturbed on appeal absent a showing of an abuse of discretion or an error of law. *Stevens v. Gulf Oil Corp.,* 108 R.I. 209, 274 A.2d 163 (1971). The language of Rule 60(b)(6) does vest the Superior Court with broad power to vacate judgments whenever that action is appropriate to accomplish justice. *Bendix Corp. v. Norberg,* R.I., 404 A.2d 505, 506 (1979).

■ In *Bendix Corp.,* after an adverse decision in the Superior Court, the tax administrator filed a Rule 60(b)(6) motion to reopen the case and remand it to the tax division for consideration in light of a statute not argued before the tax administrator or the Superior Court. In affirming the Superior Court's refusal to reopen the judgment, this court stated that Rule 60(b)(6) "is not intended to constitute a catch-all." This court also observed that "the 'circumstances must be extraordinary to justify relief.'" *Bendix Corp. v. Norberg,* 404 A.2d at 506 (quoting 1 Kent, R.I.Civ.Prac. § 60.-08 at 456 (1969)). Like the tax administrator in *Bendix Corp.,* here the chief attempted to advance new theories of law after an unfavorable judgment. Our holding in *Bendix Corp.* prevents him from doing so.

> "[C]ourts have refused to grant relief under Rule 60(b) when a party or his counsel, after trial, discovers applicable law that he did not perceive or raise at trial." *Id.* at 404 A.2d at 507.

The appeal is denied and dismissed. The order of the Superior Court is affirmed. The papers in the case are remanded to the

---

**5.** The Policemen's Arbitration Act gives policemen the right to organize and bargain collectively. General Laws 1956 (1979 Reenactment) § 28–9.2–4. This act applies to a police chief, § 28–9.2–3(a).

Superior Court with our decision endorsed thereon.