**AVCORR MANAGEMENT, LLC**

v.

**CENTRAL FALLS DETENTION FACILITY CORPORATION.**

No. 2010–343–Appeal.

Supreme Court of Rhode Island.

April 17, 2012.

Joseph J. McGair, Esq., Warwick, for Plaintiff.

Michael J. Lepizzera, Jr., Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

In this appeal, we are asked to decide whether the terms of an agreement between the plaintiff, AVCORR Management, LLC (AVCORR), and the defendant, Central Falls Detention Facility Corporation (Detention Facility or the facility), require the facility to arbitrate certain disputed fees. AVCORR petitioned the Superior Court to appoint a binding arbitrator to settle the parties' dispute concerning several types of fees that AVCORR claimed were owed to it by Detention Facility. The facility filed a limited opposition to AVCORR's petition, arguing that only some, but not all, of the fees were subject to binding arbitration pursuant to the agreement. The hearing justice granted AVCORR's petition and Detention Facility appealed. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we vacate and reverse, in part, the order of the Superior Court.

## I

### Facts and Procedural History

The essential facts of this case are not in dispute. Detention Facility is a public corporation, distinct from the municipality of Central Falls, which was created to fill the need for a detention facility in Rhode Island. See G.L.1956 § 45–54–1(a) and § 45–54–2(a). It currently operates the Donald W. Wyatt Detention Facility (Wyatt) in the City of Central Falls.[1] On January 1, 2008, Detention Facility entered into a consulting agreement (agreement) with AVCORR, in which AVCORR agreed to act as a "consultant" to the facility and "to provide administrative oversight services and executive director services" with respect to the "day to day operation" of Wyatt. The agreement called for an initial five-year term, subject to either party's right to terminate the agreement.

The parties amended the agreement on May 22, 2008, altering, *inter alia*, the provisions concerning the manner of compensation. Section E of the amended agreement stated that Detention Facility would compensate AVCORR for services rendered "at the rates and in the manner set forth in Amended Exhibit B."[2] Amended Exhibit B, entitled "Annual Management Fee," was attached to the amendment and incorporated therein. It defined the Annual Management Fee as the sum of the "Annual Fixed Fee" and the "Annual Man Day Fee." Section (a) of Amended Exhibit B set forth the payment procedure for the Annual Fixed Fee, which was payable in twelve equal installments, and called for AVCORR to submit monthly invoices to Detention Facility itemizing each month's portion of the Annual Fixed Fee and "its

---

1. According to Detention Facility, "Wyatt primarily serves as a temporary housing facility for inmates in federal custody awaiting criminal trial, sentencing or resolution of an immigration detainer." The facility also informs us that "[t]he main source of Wyatt's inmates has historically come from contracts secured by [the facility] with the United States Marshal[s] Office or United States Immigration and Customs Enforcement [ (ICE) ]."

2. Section E also specified that Detention Facility would reimburse AVCORR "for out-of-pocket [business] expenses."

reasonable costs and business expenses." Section (a) also stated as follows:

"If [Detention Facility] disputes [AVCORR's] invoice, or any portion thereof, it shall notify [AVCORR] of the basis of any dispute within seven (7) days of [the facility's] receipt of the invoice. The parties shall attempt to resolve any dispute over [AVCORR's] invoice through negotiation; however, either party may demand binding arbitration to resolve said disputes."

Section (b) of Amended Exhibit B discussed the Annual Man Day Fee, which was payable to AVCORR "for the correlating number of Man Days accrued at [Wyatt] during each Annual Period."[3] It was to be paid "within [t]hirty (30) [d]ays of the end of each Annual Period during which the fee was earned." Notably, section (b) of Amended Exhibit B did not contain the "binding arbitration" language found in section (a).

The body of the May 22, 2008 amendment to the parties' agreement additionally stated that the parties intended those terms of the original agreement that were "not amended, modified or otherwise supplanted" by the amendment to "remain in full force and effect." Of relevance to the issue before us are Article V, section 5.04

of the original agreement, which stated that in the event of a breach, "the non-defaulting party shall have the right to pursue any right or remedy it may have available to it at law or in equity, including, but not limited to * * * [t]ermination of the [a]greement"; and Article VII, section 7.03, wherein the parties consented to the jurisdiction of the Rhode Island courts "relative to any dispute arising out of this [a]greement.".

In April 2009, Detention Facility terminated its consulting agreement with AVCORR,[4] and on May 1, 2009, AVCORR sent the facility an invoice, which included the April 2009 portion of the Annual Fixed Fee, business expenses for that month, and additionally, the 2008 Man Day Fee.[5] Detention Facility disputed the amount owed and did not pay the invoice.

On May 27, 2010, AVCORR filed a petition in the Superior Court seeking the appointment of a binding arbitrator.[6] In its petition, AVCORR stated that while the "consulting agreement provides for binding arbitration, * * * the method of selection of a binding arbitrator [is] not provided." Therefore, AVCORR asserted, the Superior Court should "designate and appoint a single impartial arbitrator." De-

3. Although "Man Day" is not explicitly defined in the parties' agreement, we understand that term to mean "[a]n industrial unit of production equal to the work one person can produce in a day." The American Heritage Dictionary of the English Language 1062 (4th ed.2000). As Detention Facility explains on appeal, the Annual Man Day Fee in the agreement was "tied to [AVCORR] meeting certain inmate population numbers."

4. Apparently, Detention Facility's termination of the agreement was a result of the "serious financial blow" it suffered when ICE terminated its contract with the facility in December 2008. ICE did so four months after an inmate at Wyatt died while in custody. The death of the inmate, who was a Chinese na-

tional and had been detained by ICE, prompted an investigation into Wyatt's internal operations.

5. According to AVCORR's invoice, the portion of the Annual Fixed Fee, referred to as "Consulting Fees," owed was $20,020.20. The business expenses, described on the invoice as "Invoice # 0531–09" and "Invoice # 0623–09," totaled $292.27. Finally, the invoice listed the 2008 Man Day Fee as being $162,521.

6. AVCORR asserts on appeal that prior to filing this petition, on May 11, 2010, it forwarded a demand for binding arbitration to Detention Facility. However, the record of this case does not contain any evidence of such a demand.

tention Facility filed a limited opposition to AVCORR's petition, in which it submitted that before appointing an arbitrator, the Superior Court first should "determine the scope of the arbitration." The facility claimed that pursuant to Amended Exhibit B, "[t]he Annual Fixed Fee is the only fee that is subject to the [c]onsulting [a]greement's arbitration provisions." Therefore, the facility urged, the Superior Court should "only submit the dispute over the Annual Fixed Fee monies to arbitration" and should deny AVCORR's petition "to the extent [that] it seeks to arbitrate issues that are not subject to arbitration as provided in the parties' [a]greement."

A hearing was held on June 25, 2010, at which the hearing justice ruled that all aspects of the parties' dispute should be submitted to arbitration. In so doing, the hearing justice stated as follows:

> "I can't imagine the part[ies] intended that if there's a dispute over the invoice that * * * when they provided for arbitration to resolve that dispute they had in mind just resolving the dispute over the [Annual] Fixed Fee and not the [Annual] Man Day Fee. It just doesn't make a lot of sense to me. And to the extent that the agreement * * * has some ambiguity in it with respect to that issue, I think that we're better off, the policy being that to encourage the private resolution [of] disputes in arbitration, * * * we're better off having that ambiguity addressed by the arbitrator in the first instance at least."

An order granting AVCORR's petition and appointing a binding arbitrator was entered on July 2, 2010. Detention Facility appealed on July 20, 2010, and on Septem-

ber 16, 2010, the hearing justice entered another order, wherein he denied the facility's motion to stay pending appeal.[7] This Court, however, granted the facility's motion to stay on December 16, 2010.[8]

## II
### Standard of Review

 "The issue of whether a dispute is arbitrable is a question of law that this Court reviews *de novo.*" *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers,* 866 A.2d 1241, 1247 (R.I.2005). When so reviewing, we bear in mind that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Radiation Oncology Associates, Inc. v. Roger Williams Hospital,* 899 A.2d 511, 514 (R.I.2006) (quoting *School Committee of North Kingstown v. Crouch,* 808 A.2d 1074, 1078 (R.I.2002)). Because it is a matter of contract, "[g]eneral rules of contract construction apply" and the determination of "whether the parties agreed to submit a particular dispute to arbitration turns upon the parties' intent when they entered into the contract from which the dispute ultimately arose." *Id.*

## III
### Discussion

On appeal, Detention Facility argues that the hearing justice erred to the extent that he required it and AVCORR to arbitrate their dispute over the Annual Man Day Fee. It asserts that the agreement's arbitration clause "is limited in scope and only requires arbitration of disputes con-

---

7. In the same order, the hearing justice granted Detention Facility's motion to correct the record for appeal, incorporating the parties' January 1, 2008 agreement and their May 22, 2008 amendment into the record.

8. A separate appeal was docketed for the motion to stay, which appeal was closed after the motion to stay was granted.

cerning the monthly fixed fees and business expenses." The facility points out that the "limiting language" of the arbitration clause signifies that the parties did not intend "to exclusively rely upon the arbitration process to resolve all disputes arising under the [a]greement." Detention Facility further emphasizes that in Article V, section 5.04 and Article VII, section 7.03 of the agreement, "the parties expressly reserved their respective rights to pursue their legal and equitable rights in a court of law, not before an arbitrator."

AVCORR, for its part, argues that Amended Exhibit B "calls for binding arbitration of any dispute involving invoices for the payment of AVCORR's Annual Management Fee," which, it contends, consists of the Annual Fixed Fee and the Annual Man Day Fee. AVCORR claims that to interpret Amended Exhibit B as Detention Facility suggests would lead to "an absurd result in that the parties could have a dispute over the Annual Fixed Fee proceed to arbitration simultaneously with a dispute over the Annual Man Day Fee proceeding through the [c]ourts." [9] Finally, AVCORR asserts that Amended Exhibit B "trumps" Article VII, section 7.03 of the original agreement, "which provides that the parties consent to the jurisdiction of the [c]ourts of the State of Rhode Island relating to any disputes arising out of the agreement," and it also cites "the long-standing policy [of] encourag[ing] the private resolution of disputes in arbitration."

In ascertaining the parties' intent with respect to the arbitration of disputes arising out of their agreement, we look to Amended Exhibit B, which contains the arbitration clause at issue. Section (a) of Amended Exhibit B states that if Detention Facility and AVCORR cannot resolve a dispute over AVCORR's "invoice, or any portion thereof," through negotiation, "either party may demand binding arbitration to resolve said dispute[ ]." Importantly, the same section of Amended Exhibit B explicates that the monthly invoice "incorporates an equal 1/12th portion of the total Annual Fixed Fee and an itemization of its reasonable costs and business expenses reimbursable to [AVCORR] pursuant to the [a]greement." Section (a) does not mention the Annual Man Day Fee at all, and section (b), which specifically concerns the Annual Man Day Fee, does not call for that fee to be included in the monthly invoice. Instead, section (b) reads as follows: "[Detention Facility] shall verify the amount of the Annual Man Day Fee and make payment to [AVCORR] within [t]hirty (30) [d]ays of the end of each Annual Period during which the fee was earned." Also in contrast to section (a), section (b) does not contain any "binding arbitration" language.

■ It is our opinion that Amended Exhibit B makes clear that Detention Facility and AVCORR intended to arbitrate only those disputes dealing with the "invoice," which was payable on a monthly basis. It is also clear that the term "invoice" was defined by the parties as consisting of the monthly portion of the Annual Fixed Fee and the business expenses, but not the Annual Man Day Fee. The Annual Man Day Fee, described in a different section of Amended Exhibit B, was to be paid

---

9. Detention Facility responds to AVCORR's "absurdity" argument by explaining that agreeing to arbitrate disputes over the monthly invoices and to litigate any other legal disputes arising under the agreement "is not unusual" because the parties "ha[ve] every reason to resolve * * * regular monthly billings in an expedited fashion," whereas "a one-time bonus" in excess of $150,000 "is undoubtedly a matter that rises to the level of something more significant than $292.00 in monthly copying, over-night delivery or conference call expenses."

separately from the monthly invoice—specifically, "within [t]hirty (30) [d]ays of the end of each Annual Period during which the fee was earned."

The parties' intent not to submit the entire Annual Management Fee to arbitration is further elucidated by Article V, section 5.04 and Article VII, section 7.03 of the agreement, which sections were not altered by the May 22, 2008 amendment.[10] Article V, section 5.04, in the event of a breach, vests the nonbreaching party with "the right to pursue any right or remedy it may have available to it at law or in equity." Article VII, section 7.03 specifies that the agreement was to be "governed by and construed in accordance with the laws of * * * Rhode Island," and that the parties consented to the jurisdiction of Rhode Island courts "relative to any dispute arising out of [the] [a]greement" It therefore is evident that the parties were free to resolve all their disputes with respect to the agreement, save for any dispute about the Annual Fixed Fee or the business expenses, in Rhode Island courts.

 We find unavailing AVCORR's contention that providing "for two separate and distinct forms of dispute resolution regarding the payment of the AVCORR Annual Management Fee leads to an absurd result." Because "[a]rbitration is a creature of the contract between the parties[,] * * * [a] duty to arbitrate a dispute arises only when a party agrees to arbitration in clear and unequivocal language, and even then, the party is only obligated to arbitrate issues that it explicitly agreed to

arbitrate." *State Department of Corrections*, 866 A.2d at 1247.[11]

In the case at hand, Detention Facility and AVCORR did not agree "with clear language" to arbitrate their disputes regarding the Annual Man Day Fee; they therefore are not under any "duty to arbitrate" such disputes. *Crouch*, 808 A.2d at 1078 (quoting *Stanley–Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 697 A.2d 323, 326 (R.I.1997)). Consequently, we hold that Detention Facility and AVCORR agreed to submit to arbitration only those disputes dealing with the Annual Fixed Fee and the business expenses, and not those disputes dealing with the Annual Man Day Fee.

## IV

### Conclusion

For the reasons stated in this opinion, we vacate and reverse the order of the Superior Court to the extent that the order grants AVCORR's petition to appoint a binding arbitrator to resolve the parties' dispute regarding the Annual Man Day Fee. The record shall be remanded to the Superior Court for further proceedings consistent with this opinion.

Justice FLAHERTY did not participate.

---

10. The amendment specifically states that the parties intended for those terms of the agreement that were "not amended, modified or otherwise supplanted by" the amendment to "remain in full force and effect."

11. It is true that "[w]hen uncertainty exists about whether a dispute is arbitrable, this Court, like the United States Supreme Court, 'has enunciated a policy in favor of resolving

any doubt in favor of arbitration.'" *School Committee of North Kingstown v. Crouch*, 808 A.2d 1074, 1078 (R.I.2002) (quoting *Brown v. Amaral*, 460 A.2d 7, 10 (R.I.1983)). Here, however, no uncertainty exists because the plain language of the agreement sets forth the conditions for arbitration. Thus, a public policy analysis is unnecessary.