March 12, 2019

**Supreme Court**

No. 2017-200-Appeal.
No. 2017-201-Appeal.
(WC 16-402)

Rhode Island Council on Postsecondary : 
Education et al.

v. :

Hellenic Society Paideia – Rhode Island : 
Chapter.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2017-200-Appeal.
No. 2017-201-Appeal.
(WC 16-402)
(Dissent begins on page 15)

Rhode Island Council on Postsecondary        :
        Education et al.

            v.                            :

Hellenic Society Paideia – Rhode Island      :
          Chapter.


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  We are called upon to decide whether the terms of a ground lease agreement between the plaintiffs, the University of Rhode Island and the Rhode Island Council on Postsecondary Education, and the defendant, Hellenic Society Paideia – Rhode Island Chapter, require the parties to arbitrate all disputes arising from their lease agreement, or merely a subset of those disputes.  The defendant appeals from orders of the Superior Court denying its Motion to Stay Litigation in Favor of Arbitration pursuant to G.L. 1956 § 10-3-3.  These consolidated appeals came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After hearing the arguments of counsel and examining the memoranda filed on behalf of the parties, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we vacate the order of the Superior Court and remand the case to the Superior Court for entry of an order staying litigation pending arbitration proceedings.

- 1 -

# I

# Facts and Travel

In 2005, the University of Rhode Island and the Rhode Island Board of Governors for Higher Education[1] agreed to lease a parcel of land on the Kingston campus of the University of Rhode Island to the Hellenic Society Paideia – Rhode Island Chapter (the Society or defendant) for the purpose of building and maintaining a Center for Hellenic Studies, which also was to house the Hellenic Studies Program at the University and the University of Rhode Island Center for Humanities. The initial term of the Lease was for ninety-nine years following completion of the building, and the Lease gave defendant the option to extend the initial Lease term for four additional ninety-nine year terms.[2]

Although excavation was completed and a foundation was laid, construction of the building was halted in 2012 and, for reasons outside the scope of this appeal, construction was never recommenced. In November 2012, plaintiffs sent a Notice of Default and Termination of Ground Lease to the Society, advising it of plaintiffs' intent to terminate the Lease because construction had not been completed within thirty months of the commencement of construction, as required by the Lease. In June 2013, plaintiffs sent another letter to the Society, demanding that defendant restore the property to its former condition.

---

[1] The Rhode Island Council on Postsecondary Education is the statutory successor to the Rhode Island Board of Governors for Higher Education and is a public corporation that holds "legal title (in trust for the state) to all property, real and personal," owned by and/or under control of the University of Rhode Island and other public colleges in the state. General Laws 1956 § 16-59-1(a), as amended by P.L. 2014, ch. 145, art. 20, § 5.

[2] At oral argument, defense counsel posited that the agreement at issue is in fact not a lease, as the document, titled "Ground Lease Agreement," refers to itself, but is in substance a long-term joint venture agreement. Any difference between these characterizations is irrelevant to the outcome of this appeal, and, therefore, we need not decide between them. In the interest of clarity, and for the purpose of this opinion only, we adopt the language of the agreement and refer to it as "the Lease."

After years of back and forth between the parties, plaintiffs brought a petition in the Superior Court to appoint a special master to resolve the issues between the parties in relation to the failed project. Plaintiffs soon thereafter filed a first amended complaint seeking, *inter alia*, a declaratory judgment that defendant was in breach of the Lease. The amended complaint also sought an order directing defendant to restore the premises to its former condition or, in the alternative, to require defendant to reimburse plaintiffs for doing so themselves. While the case was in its early stages, defendant moved for a stay of litigation pursuant to § 10-3-3, arguing that Section 14.3 of the Lease, entitled "Conciliation; Arbitration," required that all disputes be resolved by arbitration. The hearing justice ruled, for reasons discussed in more detail below, that the language of that provision did not mandate arbitration in this case, and consequently he denied defendant's motion for a stay of the litigation. The hearing justice later reaffirmed that ruling after defendant moved for reconsideration of the order denying the motion for a stay.[3]

Before this Court, defendant argues that the hearing justice erred when he found that the Lease's arbitration clause applied only to disputes that do not involve an alleged breach of the Lease.

## II

### Standard of Review

"The issue of whether a dispute is arbitrable is a question of law that this Court reviews *de novo*." *Town of Johnston v. Rhode Island Council 94, AFSCME, Local 1491*, 159 A.3d 83, 85 (R.I. 2017) (quoting *AVCORR Management, LLC v. Central Falls Detention Facility Corp.*, 41 A.3d 1007, 1010 (R.I. 2012)). Arbitration is a creature of the agreement between the parties, and a "duty to arbitrate a dispute arises only when a party agrees to arbitration in clear and

---

[3] The defendant has filed two separate appeals from those two orders. The appeals were consolidated by order of this Court.

unequivocal language, and even then, the party is only obligated to arbitrate issues that it explicitly agreed to arbitrate." *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I. 2005). Because arbitration is a matter of contract, "[g]eneral rules of contract construction apply[,]" and "whether the parties agreed to submit a particular dispute to arbitration turns upon the parties' intent when they entered into the contract from which the dispute ultimately arose." *Radiation Oncology Associates, Inc. v. Roger Williams Hospital*, 899 A.2d 511, 514 (R.I. 2006). "In ascertaining what the intent is we must look at the instrument as a whole and not at some detached portion thereof." *Hill v. M. S. Alper & Son, Inc.*, 106 R.I. 38, 47, 256 A.2d 10, 15 (1969). Significantly, however, "[w]hen uncertainty exists about whether a dispute is arbitrable, this Court, like the United States Supreme Court, 'has enunciated a policy in favor of resolving any doubt in favor of arbitration.'" *School Committee of Town of North Kingstown v. Crouch*, 808 A.2d 1074, 1078 (R.I. 2002) (quoting *Brown v. Amaral*, 460 A.2d 7, 10 (R.I. 1983)).

### III

### Discussion

### A

### Appeal as of Right

Before reaching the merits, we must first grapple with plaintiffs' contention that defendant's appeal is not properly before us.

The defendant's motion for a stay of litigation was brought pursuant to § 10-3-3, which requires a hearing justice to order a stay of litigation "upon being satisfied that the issue involved in the suit or proceeding is referable to arbitration[.]" Direct appeals may be taken "upon the entry of any final order provided in § 10-3-3[.]" Section 10-3-19. The plaintiffs argue, however,

that orders denying a motion to stay litigation, although brought pursuant to § 10-3-3, deny by their very nature the existence of an issue "referable to arbitration" and that, in the absence of an arbitrable issue, the Arbitration Act as a whole, including § 10-3-19, simply does not apply. Thus, plaintiffs submit, an order *denying* a motion to stay litigation pending arbitration is not final and is reviewable only by writ of certiorari.

Significantly, § 10-3-19 provides that "[a]ny party aggrieved by any ruling or order" as authorized in chapter 3 of title 10 of the General Laws "may obtain review as in any civil action, and upon the entry of any final order provided in § 10-3-3 * * * he or she may appeal to the supreme court as provided for appeals in civil actions[.]" By specifying that "*any* party" may bring a direct appeal if aggrieved by "*any* ruling" authorized by chapter 3 of title 10, the General Assembly clearly intended to permit direct appeals from orders both granting and denying motions to stay brought pursuant to § 10-3-3. Section 10-3-19 (emphasis added); *see Harvard Pilgrim Health Care of New England, Inc. v. Gelati*, 865 A.2d 1028, 1037 (R.I. 2004) ("When the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning."). We conclude that a party who has sought a stay on the basis of an arbitrable issue is certainly aggrieved by an order denying the existence of such an issue and that such an order is final in nature. Therefore, it is our opinion that a party aggrieved by an order denying a motion to stay litigation brought pursuant to § 10-3-3 may appeal as of right from that order, pursuant to § 10-3-19.[4]

---

[4] This holding is consonant with our decision in *Newman v. Valleywood Associates, Inc.*, 874 A.2d 1286 (R.I. 2005), in which we "view[ed] the denial of defendant's petition to arbitrate as the equivalent of an order denying a motion to stay litigation under [G.L. 1956] § 10-3-3" and held that such an appeal was "properly before us pursuant to § 10-3-19." *Newman*, 874 A.2d at 1288.

**The Arbitrable Issue**

We turn now to the meat of the issue—whether the parties "agree[d] to arbitration in clear and unequivocal language[.]" *Rhode Island Brotherhood of Correctional Officers*, 866 A.2d at 1247. The defendant argues that the parties explicitly agreed to refer any dispute arising from an alleged breach of the Lease to arbitration, and defendant relies in support of this argument on a provision entitled "Conciliation; Arbitration." The relevant language is as follows:

> "14.3        Conciliation; Arbitration.
>
> "14.3.1        Conciliation In the event of any controversy, claim or dispute arising out of or relating to this Lease or with respect to any breach hereof, the parties shall seek to resolve the matter amicably through mutual discussions * * *.
>
> "14.3.2        Arbitration - If the parties fail to resolve any such controversy, claim or dispute by amicable arrangement and compromise within the thirty (30) day period immediately following the date of the notice initiating such discussions referred to in subsection (a) [*sic*] above * * * the aggrieved party shall submit the controversy, claim or dispute to arbitration * * *."

**1**

**The Arbitration Clause**

The underpinning of the hearing justice's bench decision was what he referred to as "a conspicuous difference" between the language of the conciliation clause in Section 14.3.1 and that of the arbitration clause in Section 14.3.2. He pointed out that the conciliation clause referred to "any controversy, claim or dispute arising out of or relating to this Lease or with respect to any breach hereof[.]" He noted that, on the other hand, the arbitration clause omits the

language "with respect to any breach hereof." The consequence of this difference, he ruled, was a limitation in the scope of the arbitration clause. In other words, the hearing justice reasoned that, because the arbitration clause omitted the words "with respect to any breach hereof," the parties did not intend to arbitrate issues involving a breach of the Lease.

To reach this conclusion, the hearing justice applied the canon of construction known as the "specific-over-general" rule. That canon applies when two statutory or contractual provisions cannot be reasonably construed to avoid a conflict between them. *See Park v. Ford Motor Company*, 844 A.2d 687, 694 (R.I. 2004); *see also Capital Ventures International v. Republic of Argentina*, 652 F.3d 266, 271 (2d Cir. 2011) (applying canon to conflicting contractual provisions). "When, however, the two provisions are irreconcilable and cannot both be given effect, the specific [provision] prevails and is to be construed as an exception to the more general [provision]." *Park*, 844 A.2d at 694. The hearing justice believed that the absence of the words "with respect to any breach hereof" in the arbitration clause created a conflict with the conciliation clause, and, applying the specific-over-general rule, he ruled that "in order for there to be arbitration, there had to be [a] controversy, claim, or dispute other than a breach of the [Lease]" because only the conciliation clause specifically referred to incidents of breach.

We review the Lease *de novo* to determine whether the parties' dispute is arbitrable. *Rhode Island Council 94*, 159 A.3d at 85. In our opinion, the conciliation and arbitration provisions cannot be read separately when conducting an analysis because, as we explain above, "[i]n ascertaining what the intent is we must look at the instrument as a whole and not at some detached portion thereof." *Hill*, 106 R.I. at 47, 256 A.2d at 15. This is true especially when the contract provisions are so closely linked by their appearance together, one after the other, in Section 14.3 "Conciliation; Arbitration." Their proximity to one another in the same section of

the Lease leads us to the inevitable conclusion that the two provisions "are associated with and take color from each other[.]" *Industrial National Bank v. Sefsick*, 92 R.I. 93, 100, 166 A.2d 417, 421 (1961). For the reasons expanded upon below, when Section 14.3 "Conciliation; Arbitration" is read as a whole, as it must be, it is apparent that the conciliation and arbitration provisions create a seamless two-step dispute resolution process, rather than two mutually exclusive processes pertaining to separate issues.

Consequently, we do not agree with the analysis of the hearing justice. This is so because the two contractual clauses can reasonably be construed so as to avoid conflict with one another, thus making the specific-over-general rule inapplicable. *Park*, 844 A.2d at 694. We will not apply the canon to create a conflict.

The conciliation clause, Section 14.3.1, requires the parties to attempt an amicable resolution of "any controversy, claim or dispute arising out of or relating to this Lease or with respect to any breach hereof[.]" The Lease describes the contemplated conciliation process as "mutual discussions to be initiated by written notice by the aggrieved party to the other party[,]" which "may be conducted over the telephone, or at a meeting, or meetings, held at the principal offices of Landlord or Tenant or at such other location as the parties may agree." In short, the conciliation clause does no more than obligate the parties to engage in frank and good faith discussions in an effort to hash out their differences before resorting to a third party to resolve them.

However, should those amicable discussions fail to resolve the "controversy, claim or dispute," the Lease provides the next step in the very next subsection. Section 14.3.2, the arbitration clause, begins with the following dependent clause:

> "If the parties fail to resolve any such controversy, claim or dispute
> by amicable arrangement and compromise within the thirty (30)

> day period immediately following the date of the notice initiating such discussions referred to in subsection (a) [*sic*] above * * *."

The use of the word "such" in that dependent clause clearly refers back to the immediately preceding conciliation clause. The word "such" is an adjective defined by Black's Law Dictionary as "That or those; having just been mentioned." *Black's Law Dictionary* 1661 (10th ed. 2014). In line with that definition, "[t]he word 'such,' when used in a contract or statute, must, in order to be intelligible, refer to some antecedent, and will generally be construed to refer to the last antecedent in the context[.]" *American Smelting and Refining Company v. Stettenheim*, 164 N.Y.S. 253, 256 (N.Y. App. Div. 1917). Accordingly, the phrase "such controversy, claim or dispute" in the arbitration clause must refer to some antecedent. As this is the first appearance of the phrase "controversy, claim or dispute" in Section 14.3.2, we must cast our eyes to the preceding Section 14.3.1 to find that antecedent, and the only one we find is "any controversy, claim or dispute arising out of or relating to this Lease or with respect to any breach hereof[.]"[5]

Therefore, we are driven to the conclusion that, by using the adjective "such" in the arbitration clause to describe "controversy, claim or dispute," the drafters of the Lease intended the arbitration clause to be read in conjunction with the immediately preceding conciliation clause, and the two are not irreconcilable. Read as a whole, Section 14.3 provides that any "controversy, claim or dispute," including claims of alleged breaches of the Lease, are to be

---

[5] Even if the two clauses contemplated separate dispute resolution processes, the use of the word "such" to refer to the controversies, claims, or disputes in the conciliation clause also incorporates the modifying phrase "arising out of or relating to this Lease or with respect to any breach hereof" into the arbitration clause. Thus, the scopes of the conciliation and arbitration clauses are identical and, therefore, even if a conflict existed, the specific-over-general rule would be of little help in resolving a conflict between the two clauses.

arbitrated pursuant to Section 14.3.2, provided that the parties have attempted, and failed, to resolve those disputes through amicable mutual discussions, as contemplated in Section 14.3.1.

**2**

**Landlord's Reservation of Rights and Remedies**

The plaintiffs also argue that the arbitration clause is neither "exclusive, nor mandatory, nor 'clearly written and expressed'" because Article X of the Lease provides for specific remedies in the event of several defined "Events of Default." Specifically, Section 10.2, entitled "Remedies," contains the following language:

> "10.2.1 Upon the occurrence of any Event of Default, Landlord may terminate this Lease upon thirty (30) days written notice to Tenant and, in addition to any right or remedy set forth herein, shall have all rights and remedies allowed at law or in equity or by statute or otherwise."

The plaintiffs argue that, even if the arbitration clause in Section 14.3.2 provides for arbitration in the case of a breach of the Lease, the language in Section 10.2.1 gives them an additional, or alternative, option of pursuing litigation at their election.

To support their argument, plaintiffs rely on our decision in *AVCORR Management, LLC*, where the Central Falls Detention Facility Corporation disputed claims for certain fees allegedly owed for administrative services that had been performed by AVCORR. *AVCORR Management, LLC*, 41 A.3d at 1009. The Detention Facility argued that "only some, but not all, of the fees were subject to binding arbitration" pursuant to the parties' agreement. *Id.* at 1008. The only imputation of arbitration in that agreement said, in Section (a), that: "The parties shall attempt to resolve any dispute over [AVCORR's] invoice through negotiation; however, either party may demand binding arbitration to resolve said disputes." *Id.* at 1009. It is true that elsewhere in the agreement, in language similar to that of the Lease in this case, the parties agreed that "the non-

defaulting party shall have the right to pursue any right or remedy it may have available to it at law or in equity[.]" *Id.* Of the utmost importance to our decision in that case, however, was that the parties had specifically "consented to the jurisdiction of Rhode Island courts 'relative to any dispute arising out of [the] [a]greement[.]'" *Id.* at 1012. We held that those additional provisions evinced the parties' intent to litigate all disputes except those specifically mentioned in Section (a) of the parties' agreement. *Id.*

In our opinion, *AVCORR* is distinguishable from the case before us now. Although it is true that we held in *AVCORR* that the parties' intent to arbitrate only a subset of issues was "further elucidated" by language reserving rights and remedies, we did so only in the context of the agreement's remarkably limited arbitration language and the parties' explicit consent to the jurisdiction of Rhode Island courts with regard to any disputes arising from the agreement. *AVCORR Management, LLC*, 41 A.3d at 1012. The Lease in this case has no such language. Moreover, when considering general arbitration clauses, other jurisdictions have held that a reservation of rights and remedies clause does no more than furnish an arbitrator with the full spectrum of remedies allowed at law.

For example, in *Robert Bosch Corp. v. ASC Inc.*, 195 Fed. App'x. 503 (6th Cir. 2006), the Sixth Circuit held that a reservation of rights and remedies in certain purchase orders had no effect on the arbitration provision in the price quotes. *Robert Bosch Corp.*, 195 Fed. App'x. at 507. In that case, Bosch provided price quotes for certain automobile parts to ASC. *Id.* at 504. The quotes incorporated Bosch's standard terms and conditions, including an arbitration clause that required binding arbitration of "[a]ll disputes between the parties arising out of or related to this agreement or the breach, alleged breach or interpretation thereof[.]" *Id.* at 507. In response to the quote, ASC sent Bosch several purchase orders containing the following language: "All

rights and remedies are reserved to ASC in this Order and they shall be considered to be cumulative and in addition to all other rights or further remedies as provided by law or equity that is not specifically covered or mentioned in these conditions." *Id.* at 504, 507. After concluding that the additional terms in ASC's purchase orders were included in the parties' agreement under Michigan's codification of U.C.C. § 2-207, the Sixth Circuit said:

> "We believe that 'rights and remedies' does not cover the right to judicial fora. * * * We read 'rights and remedies' as it is objectively understood to refer to those privileges and claims for redress governing the relationship of the parties 'by virtue of the contract's provisions.' Thus, 'rights' refers to those privileges that are concomitant to the duties the parties owe under the contract, and 'remedies' refers to redress for a breach of those rights." *Id.* at 507 (citations omitted).

Similarly, in *Dixon v. Perry & Slesnick, P.C.*, 914 N.E.2d 97 (Mass. App. Ct. 2009), the Massachusetts Appeals Court held that a reservation of rights clause did not render a separate arbitration provision ambiguous and unenforceable. *Dixon*, 914 N.E.2d at 103. The clause at issue read: "All rights and remedies of each Party under this Agreement are cumulative and in addition to all other rights and remedies which may be available to that Party from time to time, whether under any other agreement, at law, or in equity." *Id.* The court held that the reservation of rights and remedies clause acknowledged the possibility that the parties might wish to pursue non-contract causes of action in addition to those arising out of their agreement, but did not "exempt these claims from the arbitration clause." *Id.*; *see also Dlorah, Inc. v. KLE Construction, LLC*, 2017 WL 3034259, at *6, *7 (D.S.D. 2017) (agreeing with the defendant's argument that cumulative remedies provision "merely reserves all rights and remedies, whether in law or equity, which may be pursued if negotiations fail" and "does not speak to the method of dispute resolution"); *Laughton v. CGI Technologies and Solutions, Inc.*, 602 F. Supp. 2d 262, 265 (D. Mass. 2009) ("The correct reading of the Arbitration and Cumulative Remedies

provisions is that arbitration is mandatory, but 'the arbitrator is not limited to awarding certain remedies but rather may award all remedies provided for at law.'") (quoting *Morse v. Sir Speedy, Inc.*, 1997 WL 724434, at *2 (D. Mass. 1997)).

We believe these cases to be persuasive, given the language used in this type of provision. In the case before us, Section 10.2.1 of the Lease simply reserves "rights and remedies." Examining the actual words used, we conclude that, like the cases cited above, the reservation of "rights and remedies" does little more than empower an arbitrator to award the full measure of remedies allowed at law.

The word "remedies" refers only to the redress available for plaintiffs' grievance, whether that be damages at law or an equitable remedy, such as specific performance. It does not refer to the forum for achieving that redress. *See Robert Bosch Corp.*, 195 Fed. App'x. at 507. On the other hand, the word "rights" conceivably could be construed to include the methods of achieving redress, if the word had appeared alone and divorced from the word "remedies." However, the word "rights" was not used by itself in the Lease, but rather it appeared in conjunction with the word "remedies" within a section of the Lease entitled "Remedies." We can only conclude that, at least in this context, the word "'rights' refers to those privileges that are concomitant to the duties the parties owe under the contract[.]" *Id.*

Taken together, it is our opinion that the phrase "rights and remedies" in the Lease refers only to the redress available to a party aggrieved by the breach of his rights under the agreement; it does not refer to the forum for achieving that redress. *See Robert Bosch Corp.*, 195 Fed. App'x. at 507. In other words, Section 10.2, "Remedies," provides only that "the arbitrator is not

limited to awarding certain remedies but rather may award all remedies provided for at law."[6] *Laughton*, 602 F. Supp. 2d at 265 (quoting *Morse*, 1997 WL 724434, at *2). In any event, even if Section 10.2 did cast a sliver of doubt on the parties' intent to arbitrate their disputes—and we do not believe that it does—this Court has faithfully followed the jurisprudence of the United States Supreme Court in "resolving any doubt in favor of arbitration." *School Committee of Town of North Kingstown*, 808 A.2d at 1078 (quoting *Brown*, 460 A.2d at 10); *see United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U.S. 574, 582 (1960); *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 567-68 (1960).

### 3

### Conciliation

Having deduced the parties' intent to refer "any controversy, claim or dispute" to arbitration in the event their efforts to amicably resolve those disagreements through conciliation have failed, the germane question becomes whether the parties did in fact pursue conciliation as required by Section 14.3.1 of the Lease. The plaintiffs do not contend that the parties failed to do so, and the parties' papers are replete with references to their efforts, over the course of several years, to reconcile their dispute. We conclude, therefore, that the parties have attempted

---

[6] The phrase "rights or remedies" is also used in Section 11.3, which provides that "[i]n addition to any other right or remedy available to Landlord hereunder for breach of this Lease by Tenant, Landlord shall be entitled to specific performance of the provisions set forth in this Article XI." Specific performance is an equitable remedy. Here, again, the parties used the phrase "right or remedy" to refer to the redress available, not the method of achieving that redress. Of particular note is that Section 14.3.2 specifies that arbitration is to be conducted in accordance with the rules of the American Arbitration Association. Those rules provide arbitrators with the authority to order equitable remedies, including, but not limited to, specific performance. *See* American Arbitration Association Commercial Arbitration Rules and Mediation Procedures, Rule 47(a) (effective Oct. 1, 2013).

conciliation pursuant to Section 14.3.1 and, the parties having failed to resolve their dispute through amicable mutual discussions, their dispute is ripe for arbitration pursuant to Section 14.3.2.

## IV

### Conclusion

For the foregoing reasons, the order below is vacated, and the papers are remanded to the Superior Court for entry of an order staying litigation pending arbitration pursuant to § 10-3-3.

**Chief Justice Suttell, with whom Justice Goldberg joins, dissenting.** Although it is true that this Court adheres to "a policy in favor of resolving any doubt in favor of arbitration[,]" *School Committee of the Town of North Kingstown v. Crouch*, 808 A.2d 1074, 1078 (R.I. 2002) (quoting *Brown v. Amaral*, 460 A.2d 7, 10 (R.I. 1983)), it is also true that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986)). In considering the Lease at issue in this case in its entirety, as we must, I believe that the parties intended to exclude from the arbitration clause disputes relating to an alleged breach of the agreement. Accordingly, I respectfully dissent.

As the majority notes, Section 14.3.1 of the Lease provides a mechanism for the conciliation of "any controversy, claim or dispute arising out of or relating to this Lease or with respect to any breach hereof[.]" Section 14.3.2 follows with a requirement that "[i]f the parties fail to resolve any such controversy, claim or dispute by amicable arrangement[,]" then "the aggrieved party shall submit the controversy, claim or dispute to arbitration * * *."

- 15 -

What are we to make, however, of the conspicuous absence from the latter clause of the language "or with respect to any breach hereof[?]" The majority posits that the word "such" in Section 14.3.2 is sufficient to bring the entire antecedent phrase "any controversy, claim or dispute arising out of or relating to this Lease with respect to any breach hereof" under this umbrella of the arbitration clause—a perfectly reasonable proposition, I should think, were it not for other provisions of the Lease.

Article X of the Lease spells out a number of occurrences that "shall constitute an event of default" and provides remedies for such defaults. Significantly, Section 10.1.3 designates as an event of default: "Tenant shall have abandoned the Building or Premises[,]" and Section 10.1.6 designates as an event of default: "Tenant shall fail to commence construction of the Building within twelve (12) months of the date hereof or shall fail to complete the building within thirty (30) months after commencing construction of the same." The dispute at the heart of plaintiff's complaint in the present case is defendant's alleged failure to complete construction of the building within thirty months and its abandonment of the partially completed structure. In the event of default, Section 10.2.1 allows plaintiff to terminate the Lease upon thirty days written notice to defendant and, "in addition to any right or remedy set forth [in the Lease]," plaintiff "shall have all rights and remedies allowed at law or in equity or by statute or otherwise."

In my opinion, the sweeping language of this provision, reserving to the plaintiff all rights and remedies at law or in equity, is broad enough to encompass recourse to the courts in the event of a default or breach of the Lease. It convinces me that the parties did not explicitly agree to arbitrate issues related to the defendant's breach of contract. "[A] duty to arbitrate a dispute arises only when a party agrees to arbitration in clear and unequivocal language; and,

- 16 -

even then, the party is only obligated to arbitrate issues that it explicitly agreed to arbitrate." *Weeks v. 735 Putnam Pike Operations, LLC*, 85 A.3d 1147, 1152 (R.I. 2014) (quoting *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I. 2005)).  On the contrary, the Lease provides in Section 10.2.1 that the plaintiff "shall have all rights and remedies allowed at law or in equity[,]" specifically, in Sections 10.1.3 and 10.1.6, in the event that the defendant abandons the premises and/or fails to complete construction within thirty months.

I believe the hearing justice was correct to deny the defendant's motion to stay litigation in favor of arbitration.  I would, therefore, affirm the order of the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| Title of Case | Rhode Island Council on Postsecondary Education et al. v. Hellenic Society Paideia – Rhode Island Chapter. |
|---|---|
| Case Number | No. 2017-200-Appeal. No. 2017-201-Appeal. (WC 16-402) |
| Date Opinion Filed | March 12, 2019 |
| Justices | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| Written By | Associate Justice Francis X. Flaherty |
| Source of Appeal | Washington County Superior Court |
| Judicial Officer From Lower Court | Associate Justice Michael A. Silverstein |
| Attorney(s) on Appeal | For Plaintiffs: Paul V. Sullivan, Esq. |
| | For Defendant: Bruce W. Gladsone, Esq. Leah L. Miraldi, Esq. Justin T. Shay, Esq. |